IN THE MATTER OF THE ESTATE OF
FRANK H. ARLINGHAUS, DECEASED.

Superior Court of New Jersey
Appellate Division

Submitted February 14, 1978—Decided March 15, 1978.

---

Before Judges ALLCORN, MORGAN and HORN.

*Messrs. Carton, Nary, Witt & Arvanitis,* attorneys for appellant (*Mr. Robert V. Carton,* of counsel and on the brief).

*Messrs. Pitney, Hardin & Kipp,* attorneys for respondent (*Mr. William H. Hyatt, Jr.* on the brief).

The opinion of the court was delivered by

HORN, J. A. D. The primary issue raised in this appeal by defendant Miriam Pepper, executrix of the estate of Sidney Pepper, deceased,[1] is whether the trial judge erred in denying her application to vacate a judgment in the amount of $19,842.19 which had been entered on August 30, 1971, almost 5½ years before her application was made.

The relevant facts are not in dispute. In September 1970 plaintiff Rosalie M. Arlinghaus, executrix of the last will and testament of Frank H. Arlinghaus, deceased, filed a verified complaint in the Monmouth County Court, Probate Division, seeking approval of her first intermediate accounting of the estate of her testator, who had died in 1964. The complaint alleged that Sidney Pepper was a lawyer licensed to practice in New York and had represented the estate of her decedent for about four years, from 1964 to 1968, when she discharged him. During that representation Pepper had prevailed upon her to pay to him counsel fees and disbursements in connection with legal services allegedly rendered to said estate.[2] During that four-year interval he failed to conclude either the federal or state tax proceedings. She further averred that during said four years certain events came to light which led to litigation referred to in the complaint as follows:

---

[1] Pepper died in December 1976.

[2] For the sake of brevity we omit references, except as may be necessary, to a claim for reimbursement asserted in the complaint as to Benjamin P. DeWitt, an attorney who first represented the estate and who was succeeded by Pepper upon the former's death shortly after decedent's death, and also as to DeWitt, Pepper and Howell, the law firm of which DeWitt and Pepper were partners.

(a) She has instituted an action in the United States District Court for the Southern District of New York against the said Sidney Pepper, his wife, and others alleging that they defrauded the estate by inducing plaintiff to sell certain stock owned by the estate for a consideration far below the fair value thereof without disclosing their personal self-interest in the transaction.

(b) The plaintiff and others are also asserting a cross-claim for $75,000 against the said Sidney Pepper in an interpleader action presently pending in the United States District Court for the Southern District of New York, alleging that a certain assignment by virtue of which the said Sidney Pepper claims said sum was obtained through duress.

On October 9, 1970 a probate judge issued an order which, among other things, directed Pepper to file with the court that at least 20 days before the return of the order on December 4, 1970 an affidavit in form and substance sufficient to comply with *R.* 4:42–9(b) and *R.* 4:88–4, stating in detail the nature of the legal services he performed, the amount of time spent thereon, any particular novelty or difficulty and an itemization of disbursements, *etc.* In addition, the order directed Pepper to show cause on said return date why he should not be ordered to repay to the estate such amounts as the court might find to be excessive. The order specifically stated that "in default of the timely filing of the aforesaid affidavit[s] of legal services * * * " he show cause why he should not repay to the estate the sum of $19,842.19. This order was served pursuant to *R.* 4:4–4(e) ("long-arm rule").

Pepper's only response was a notarized letter addressed to the judge who had issued the order, which letter failed to submit the requested information and which declared:

This letter is accordingly to be deemed a nullity, as if not submitted by me, if its submission by me could constitute a submission by me to the jurisdiction of a Court of New Jersey.

On July 12, 1971 a probate judge rendered a letter opinion determining that the court had jurisdiction over the subject matter and also the person of Pepper, and ordered "that * * * Pepper * * * repay to the Estate of Frank H. Arlinghaus the sum paid [him] on the date indicated in the Order

to Show Cause for the alleged services performed and expenses incurred unless appropriate Affidavits are submitted [by him] within 15 days of this Judgment." A copy of this letter was also sent to Pepper.

On August 30, 1971 a judgment, noting the failure to file the appropriate affidavits, was entered against Pepper in the amount of $19,842.19, together with interest from January 2, 1968.

The litigation already in existence as adverted to in the complaint of plaintiff was first initiated in 1968 and demonstrated the adversarial positions of plaintiff, individually and as executrix, and Pepper. Plaintiff's decedent was the founder and, at his death, the chief executive officer and a principal stockholder of Modern Talking Picture Services, Inc. (Modern). Pepper was separately paid for his services as a director of Modern and, as stated, Mrs. Arlinghaus also paid him for services in connection with the estate.

The federal court action arose out of claims that Pepper, as general counsel to Modern, had failed, for purposes of personal gain, to fully disclose to Modern's board of directors information bearing on the sale of Modern's assets or stock. The parties reached a settlement whereby Pepper was to have been paid $75,000. Subsequently the stockholders who entered into the settlement renounced it on the ground it was procured by duress. This led to the institution of an interpleader action by the holder of the $75,000, The First National Bank of Cincinnati, against Pepper, Modern, plaintiff and others. Plaintiff cross-claimed against Pepper, seeking recovery of the money paid to him as attorney for the estate. Pepper was initially successful in the trial court, the United States District Court, Southern District of New York, to which the action had been transferred. On March 14, 1975 (date of amended decision) the Court of Appeals reversed[3] the summary judgment in favor of Pepper and

---

[3]*First National Bank of Cincinnati v. Pepper*, 454 *F.* 2d 626 (2 Cir. 1972).

remanded the cause for a plenary trial. The court also reinstated plaintiff's cross-claim for the return of the fees, which the District Court had dismissed.

On remand plaintiff amended her cross-claim in the District Court, to seek enforcement of the New Jersey judgment, which by that time had been entered in the probate court. On August 6, 1975, following a trial, said District Court found that the settlement agreement between Pepper and the shareholders was invalid. The court, however, as to plaintiff's cross-claim, refused to grant full faith and credit to the New Jersey judgment. Cross-appeals were filed and on November 16, 1976 the Court of Appeals[4] affirmed the District Court's ruling on the invalidity of the settlement agreement. At the same time it reversed the District Court's determination as to the cross-claim and held that the New Jersey judgment was valid and entitled to full faith and credit. Execution of the New Jersey judgment was stayed for 60 days to allow Pepper to seek review of it, because

* * * although Pepper was the victim of his own recalcitrance in not appearing on the return date [fn. omitted], his action was not altogether without basis, as witness the sanction bestowed upon it by an able district judge, and we are troubled by our belief that he indeed rendered valuable services to the estate and should not be deprived of payment because of his alleged derelictions on unrelated matters, for which other remedies exist, without a court having passed on the merits of his claim. [*First Nat. Bank of Cincinnati v. Pepper, supra*, 547 *F*. 2d at 719]

On March 4, 1977 the trial judge in the instant case conducted a hearing on defendant's motion to vacate the judgment. The application was denied on March 15, 1977, on the ground that the application was not made within a reasonable time. The judge amplified that view in his oral opinion, saying:

---

[4]*First Nat. Bank of Cincinnati v. Pepper*, 547 *F*. 2d 708 (2 Cir. 1976).

The motion before the Court is brought under *R.* 4:50–1F. Mr. Pepper, I might say, passed away a short time ago. I may have doubts as to the validity of the judgment against Pepper. The Executrix could have been surcharged for the payment made to him, then she could have started an action against him at law. I question if the claim against him was properly an ancillary proceeding in this estate action. I question if the Court had any jurisdiction over Pepper. But that's not the issue before me. The issue is should I open the judgment dated August 30, 1971.

The motion was filed January 27, 1977, five years and five months later. *R.* 4:50–2 requires the motion to be made within a reasonable time. Pepper was a lawyer. He was obviously knowledgeable. I believe in finality to judicial proceedings. Pepper gambled. Pepper lost. Five years and five months is an unreasonable time before applying.

The motion to vacate was brought pursuant to *R.* 4:50–1 (f) which provides, in pertinent part:

On motion, with briefs, and upon such terms which are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (f) any other reason justifying relief from the operation of the judgment or order.

*R.* 4:50–2 provides:

The motion shall be made within a reasonable time, and for reasons (a), (b) and (c) of R. 4:50–1 not more than one year after the judgment, order or proceeding was entered or taken.

Defendant advances eight reasons for reversing the trial court's denial of her motion. We find none of them to be persuasive. We agree that there was inordinate and inexcusable delay which sustains the exercise of the judge's discretion. Because of this belief we cannot say that the trial judge's decision was arbitrary or capricious, or represented an abuse of his discretion.

██ In approaching the decision of whether a judgment should be reopened, "policies of expedition and finality which underlie these time limitations" (stated in *R.* 4:50–2) as well as equitable considerations must be weighed. *Hodgson*

*v. Applegate,* 31 *N. J.* 29, 37 (1959). The trial court on two occasions offered Pepper an opportunity to comply with the requirement that he justify the payments which were made to him. The first occasion was before the return of the order to show cause. The second occasion was before the judgment became final. Pepper chose to intentionally ignore the court and to retain the sums paid to him without complying with the court's directions. He was compelled to litigate the validity of the probate court's action in the federal-court action — and he was unsuccessful there. We perceive of no equitable considerations favoring the granting of an opportunity for his personal representative to do now what Pepper should have done in 1970. This is especially true when we consider that Pepper was an attorney-at-law and that he himself chose to take his chances rather than file what during his lifetime might have been a comparatively uncomplicated affidavit. We do not, however, agree with the trial judge's expressions of doubt, either as to the validity of the judgment or the propriety of the proceedings or the jurisdiction of the court.

The issue of jurisdiction over the person was raised in the litigation in the federal courts and was decided adversely to defendant. *First Nat'l Bank of Cincinnati v. Pepper, supra,* 547 *F.* 2d at 718–719. Although not mentioned by plaintiff, we perceive of no reason why this issue, thus decided, is not either *res judicata* or barred by reason of estoppel by judgment. *Brick Tp. v. Vannell,* 55 *N. J. Super.* 583 (App. Div. 1959). The law contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation. *Lubliner v. Paterson Bd. of Alcoholic Bev. Con.,* 33 *N. J.* 428, 435 (1960). As stated in *State v. Speare,* 86 *N. J. Super.* 565, 585 (App. Div. 1965), certif. den. 45 *N. J.* 589 (1965) : "Public policy and sound jurisprudence dictate that there must be a finality to judgments and an end to litigation." See also, *Hodgson v. Applegate, supra,* 31 *N. J.* at 43.

 In any event, we are of the view that there were suf-
ficient "contacts" on the part of Pepper with our State as
not to offend the "traditional notions of fair play and sub-
stantial justice." *International Shoe Co. v. Washington,* 326
*U. S.* 310, 316, 66 *S. Ct.* 154, 158, 90 *L. Ed.* 95 (1945). Al-
though the matter does not appear to have been heretofore
litigated in this State, there can be little question that an
out-of-state attorney handling matters relating to a New Jer-
sey decedent's estate has sufficient association with New Jer-
sey to justify invoking our long-arm jurisdiction. In fact,
it could be argued that such an attorney consents to the juris-
diction of the probate court, since he or she may be pre-
sumed to be aware that the payment of a fee is subject to
the probate court's approval.[5] See *Battle v. General Cel-
lulose Co.,* 23 *N. J.* 538, 546 (1957). *Freedom Finance Co.,
Inc. v. Berry,* 119 *N. J. Super.* 91 (App. Div. 1972), aff'd
o.b. 62 *N. J.* 256 (1973), on which defendant relies, is clearly
distinguishable. That case involved application of New
York's long-arm statute, which requires that one be trans-
acting business in New York, a higher level of contact than
is required to satisfy the outer limit of due process. *New
York Civil Practice Law & Rules,* § 302(a)(1).

 We are satisfied that the probate court, contrary to
defendant's argument, did have jurisdiction over the subject
matter of the litigation. That court was vested with the
authority to allow fees out of a fund in court, namely, the as-
sets of the estate. *R.* 4:42–9(a)(2) as relevant here provides:

(2) Out of a fund in court. The court in its discretion may make
an allowance out of such a fund, but no allowance shall be made as
to issues triable of right by a jury. A fiduciary may make payments
on account of fees for legal services rendered out of a fund en-
trusted to him for administration, subject to approval and allow-
ance or to disallowance by the court upon settlement of his accounts.

―――――
[5]See *First Nat. Bank of Cincinnati v. Pepper, supra,* 547 *F.* 2d
at 719.

The power of the court to approve or disapprove such payments carries with it by necessary implication the authority to compel repayment by any attorney who has received payment which is ultimately disapproved by the court.

Defendant's contention that the court was without jurisdiction because there was no fund in court is specious in view of *Sarner v. Sarner,* 38 *N. J.* 463, 467–468 (1962); *Sunset Beach Amusement Corp. v. Belk,* 33 *N. J.* 162, 168–169 (1960), and *Katz v. Farber,* 4 *N. J.* 333, 344 (1950). These cases make it amply clear that "it is not necessary that the fund be actually and physically in court; it is sufficient if, as a result of plaintiffs' action, the fund is brought within the control of the court. [Citations omitted.]" *Sarner v. Sarner, supra,* 38 *N. J.* at 468.

The probate court had the authority to enter the judgment. *N. J. Const.* (1947), Art. VI, § IV, par. 5, confers upon county courts, in civil causes, "including probate causes," within their jurisdiction, the power to grant legal and equitable relief "so that all matters in controversy between the parties may be completely determined." Accordingly, whatever relief is necessary may be granted by a county court in order to dispose of the matters in controversy once the jurisdiction of the county court has been properly invoked. *In re Koehler,* 43 *N. J. Super.* 585, 597 (App. Div. 1957). See also 7 *N. J. Practice (Clapp, Wills and Administration),* § 1447 at 150 (1962).

Defendant misconceives the applicability of *In re Estate of Virgilio,* 71 *N. J. Super.* 89 (App. Div. 1961). There the administrator of a decedent's estate sought to establish his estate's right to funds deposited in accounts opened by decedent, *independently of any proceeding for approval of or in connection with a pending accounting.* The Appellate Division under these circumstances held that the action should have been brought in the Chancery Division of the Superior Court.

Defendant contends that the principle of comity should have compelled the probate court to defer to the federal

court on the issue of his liability for repayment of attorney's fees. The rule of comity was discussed by Justice Heher in *O'Loughlin v. O'Loughlin,* 6 *N. J.* 170, 179 (1951):

* * * Considerations of comity forbid interference with the prosecution of a proceeding in a foreign jurisdiction capable of affording adequate relief and doing complete justice, unless there be a special equity sufficient in conscience to stay the hand of the defendant. The question is not the existence of the power but the propriety of its exercise in the given case. The rule of comity is grounded in the policy of avoiding conflicts of jurisdiction, unless upon strong grounds, and the general principle that the court which first acquires jurisdiction of the issue has precedence.

At the time that the instant proceeding was instituted, October 1970, the interpleader action had already been started. It is not clear when plaintiff cross-claimed in the interpleader suit for return of attorney's fees paid to Pepper. The obvious difficulty with defendant's present contention regarding comity is that Pepper never made the probate court aware of the federal-court cross-claim. Pepper might have interjected the issue of comity had he complied with the directions contained in the probate court's order of October 9, 1970. The court, however, was not informed that the same issue was being litigated in the federal-court proceedings. We need not at this late date determine whether the doctrine of comity would have applied under any circumstances, since it is a rule of our own courts that the probate court — not some other court — shall approve or disapprove of such payments.

Finding no merit in any of defendant's contentions, the order under appeal is affirmed.