**Frank J. RYAN and Evelyn M. Ryan, Plaintiffs,**

v.

**LISS, TENNER & GOLDBERG SECURITIES CORP., et al., Defendants.**

**Civ. A. No. 87–1330.**

United States District Court, D. New Jersey.

April 8, 1988.

Robert M. Axelrod, of Sills Cummis Zuckerman Radin Tischman Epstein & Gross, Newark, N.J., for defendant.

John V. McDermott, Jr., Vernon, N.J., for plaintiff.

## OPINION

WOLIN, District Judge.

In June, 1983, plaintiff Frank J. Ryan and Evelyn M. Ryan opened an account with defendant Liss, Tenner & Goldberg Securities Corporation (LTG), in order to purchase and sell stocks and bonds. LTG required the Ryans to execute three separate forms as part of the process of opening their account. The first form was a basic information sheet which required personal data and an investment objective. The second form, preprinted on Bradford Broker Settlement, Inc. letterhead, constituted the Customer's Agreement for Cash and/or Margin Accounts (Customer Agreement). In pertinent part that form states:

ARBITRATION OF DISPUTES

Any controversy arising out of or relating to any account(s) of the undersigned [plaintiffs], transactions with you on behalf of the undersigned, or this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc., the Board of Governors of the New York Stock Exchange, or the arbitration panel of any other exchange which has jurisdiction over the transaction in dispute, as the undersigned may elect.... It is understood that this Agreement to arbitrate does not constitute a waiver of the right to a judicial forum where such waiver would be void under the securities laws and specifically does not prohibit the undersigned from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction.

The third and final form signed by the Ryans was the joint account agreement, which in general, set forth the obligations and liabilities of the parties and which in relevant part, directly above the date and signature of the parties, states:

Each of the undersigned has signed the Customer's Agreement for cash and/or

margin accounts and Consent to Loan of Securities which are intended to cover, in addition to the provisions hereof, the terms upon which the joint account is to be carried.

On or about April 12, 1985, LTG sold plaintiffs Wichita County Texas Health Facilities 12% bonds, due December 1, 2011. These bonds were originally issued in 1983 by an instrumentality of the State of Texas, and the State of Texas authorized the issuance through the Texas Health Facilities Development Act, Article 1528j Vernon's Annotated Texas Civil Statutes, as amended. The purpose of the bonds was to finance a residential and health care facility for aged Texans in Wichita Falls, Texas.

On March 31, 1986, plaintiffs filed a complaint against LTG with the New Jersey Superior Court, Law Division, sitting in Passaic County, which alleged a series of state law claims arising from a dispute between the parties in connection with the Wichita bonds transaction.

On May 6, 1986 LTG made a written demand upon plaintiffs that they submit their dispute to arbitration pursuant to the arbitration clause in the Customer Agreement. Plaintiffs did not respond to LTG's demand.

LTG thereafter moved in the state court to compel arbitration. Plaintiffs opposed LTG's motion and cross-moved for leave to amend their complaint in order that they might add several federal causes of action. The court granted LTG's motion on June 18, 1986 and denied plaintiff's cross-motion on July 18, 1986.

On April 10, 1987 plaintiffs filed this action against LTG in the United States District Court, District of New Jersey. The complaint sets forth a series of purported violations of federal securities laws and other federal statutes based upon the Wichita bonds transaction.

Currently before the court is defendant's motion to compel arbitration and/or for summary judgment dismissing plaintiffs' claims. Defendants move to compel arbitration of this matter on the grounds that there has already been a finding that a valid arbitration agreement exists between the parties, that such agreement has been held to apply to the controversy between the parties in connection with the Wichita bonds transaction and that the Federal Arbitration Act requires the arbitration agreement to be enforced. In addition, defendants contend that the federal securities claims and the RICO claim are not excepted from the arbitration agreement. For the reasons set forth below defendants' motion is granted.

DISCUSSION:

Defendants first contend that plaintiffs should not be permitted to relitigate issues which have already been decided in the prior state court proceedings. In particular, defendants assert that any debate as to whether the arbitration clause in the Customer Agreement Form is enforceable by LTG has been determined, in favor of LTG, by the state court. As a result, defendants argue that any claims brought by the plaintiffs in the present action which are subject to arbitration, must be arbitrated pursuant to the arbitration agreement between the parties. This court agrees.

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by 28 U.S.C. § 1738 which provides:

> The ... judicial proceedings of any court of any such state ... shall have the full faith and credit within the United States and its territories as they have by law or usage in the courts of such state ... from which they are taken.

Thus, a federal court is compelled to apply the claim and issue preclusion law of the forum state in which the prior judgment was rendered. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *See also Middlesex County Board of Chosen Freeholders v. State of New Jersey Dept. of Environmental Protection*, 645 F.Supp. 715, 719 (D.N.J.1986). The preclusive effect of the state court judgment against the plaintiffs must therefore be determined by reference to the law of New Jersey.

In New Jersey, collateral estoppel precludes the relitigation of an issue that has been put in issue and directly determined adverse to the party against whom the estoppel is asserted. *Melikian v. Corradetti,* 791 F.2d 274 (3d Cir.1986); *State v. Gonzalez,* 75 N.J. 181, 380 A.2d 1128 (1977). That doctrine contemplates that, when a controversy between parties is once fairly litigated and determined, it is no longer open to relitigation. *Matter of Arlinghaus' Estate,* 158 N.J.Super. 139, 385 A.2d 904 (App.Div.1978).

■ As review of the papers submitted in the state court proceeding, as well as the order which was entered on June 18, 1986, indicates that plaintiffs had a full and fair opportunity to litigate the issues of whether a valid arbitration agreement existed between the parties and whether the dispute concerning the Wichita bonds transaction fell within that agreement.[1] The state court not only found that a valid arbitration agreement existed between the parties,[2] but also that the dispute concerning the Wichita bonds was within the scope of the arbitration agreement. Thus, plaintiffs are precluded from relitigating those issues here.

Plaintiffs contend, however, that the scope of the arbitration agreement does not extend to their federal securities claims, citing the last sentence of the arbitration clause:

It is understood that this Agreement to arbitrate does not constitute a waiver of the right to a judicial forum where such waiver would be void under the securities laws and specifically does not prohibit the undersigned from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction.

Plaintiffs argue that the plain meaning of the last portion of that sentence is that the parties intended arbitration to be a mere option to them, which in no way affected their right to bring suit in a judicial forum.

Defendants oppose plaintiffs' interpretation and argue that acceptance of plaintiffs' version would render the first part of the sentence meaningless. Defendants contend that the final sentence of the arbitration clause merely provided that should a claim be deemed nonarbitrable under the law and the parties' agreement to arbitrate be invalid as to such claim, no waiver of the right to a judicial forum would be implied.[3] Under plaintiffs' version, defendants argue, the language regarding "waiver" in the first part of the sentence would be utterly devoid of meaning because no action or agreement would have been made indicating a possible waiver. This court agrees with defendants' arguments, since an interpretation that gives a reasonable meaning to all parts of an agreement is preferred to one that leaves portions of the agreement meaningless. *Mayer v. Development Corp. of America,* 541 F.Supp. 828 (D.N.J.1981), *aff'd,* 688 F.2d 822 (3d Cir. 1982).

■ Furthermore, in interpreting the scope of an arbitration clause, federal courts are not restrained by the traditional rules of contract construction. *See Singer Co. v. Tappan Co.,* 403 F.Supp. 322 (D.N.J. 1975), *aff'd,* 544 F.2d 513 (3d Cir.1976). Rather, any doubtful issues regarding the applicability of an arbitration clause are to be decided in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103

1. Indeed on page 3 of plaintiffs' memorandum in support of their cross-motion and in opposition to defendants' motion to compel arbitration in the state court, plaintiffs state: "[T]he real question to be determined is whether that agreement relates to the aspect of this transaction that the plaintiffs complain of and whether this agreement itself was made with the defendant...."

2. Plaintiff's discussion of *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden,* 795 F.2d 1111

(1st Cir.1986) is inapplicable to this motion as a valid arbitration agreement *between these parties* has already been found to exist by the state court.

3. Defendants point out that at the time this agreement was executed, certain of the federal securities claims under the 1933 and 1934 Acts had at times been held not arbitrable under the prevailing law.

S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *Atterburg v. Anchor Motor Freight, Inc.,* 425 F.Supp. 841 (D.N.J.1977). Thus, this court finds the arbitration clause before it to include an agreement to arbitrate federal securities claims, where such arbitration is permissible under the law.

■ Plaintiffs have already indicated their agreement that in light of the recent decision in *Shearson/American Express, Inc. v. McMahon,* 483 U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), upon a finding of a valid arbitration agreement all claims under the 1934 Act and RICO would be subject to arbitration. The only remaining question is whether plaintiffs claim under § 17(a) of the 1933 Securities Act, 15 U.S.C. A. § 77q(a) is arbitrable.[4]

Plaintiffs contend that, even in light of *McMahon,* claims brought under the 1933 Securities Act are nonarbitrable. Plaintiffs cite *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (antiwaiver and jurisdictional provisions within 1933 Act void agreement to arbitrate 1933 Act disputes) and *Chang v. Lin,* 824 F.2d 219 (2d Cir.1987) (noting *Wilko* has not been officially overruled) in support of their argument. This court, however, is unpersuaded by plaintiffs' argument for several reasons.

First, the court in *McMahon,* while not expressly overruling *Wilko v. Swan,* did find the rationale behind the *Wilko* holding to be somewhat outdated. 107 S.Ct. at 2341. Indeed, the court stated that it believed *Wilko* would have been determined differently had the arbitration process in 1953 provided an adequate substitute for adjudication. *Id.* Justice Blackmun went even further in his concurrence stating "the Court effectively overrules *Wilko* by accepting the Securities and Exchange Commission's position that arbitration procedures in the securities industry and the Commission's oversight of the self-regulatory organizations (SROS) have improved greatly since *Wilko* was decided." 107

S.Ct. at 2346. (Blackmun, J. concurring in part and dissenting in part).

In addition, the Second Circuit opinion in *Chang v. Lin* is not controlling here, especially in light of other circuits' contradictory holdings. *See e.g. Noble v. Drexel, Burnham, Lambert, Inc.,* 823 F.2d 849 (5th Cir.1987) ("a formal overruling of *Wilko* appears apparent").

Finally, this court is persuaded by defendants' analysis of 1933 claims in light of the *McMahon* decision. The similarities between the Securities Act and the Exchange Act in respect to non-waiver provisions and implied causes of action makes the analogy between *McMahon's* analysis of 1934 Act claims and defendants' analysis of 1933 Act claims convincing. Therefore, this court concludes that plaintiffs' claim alleging a violation of § 17(a) of the 1933 Act is subject to compelled arbitration. *See Aronson v. Dean Witter Reynolds, Inc.,* 675 F.Supp. 1324, Fed.Sec.L.Rep. (CCH) ¶ 93,593 (S.D. Fla.1987).

Based upon the above grounds, defendants' motion to compel arbitration[5] and stay all proceedings in this court pending the outcome of arbitration is granted.

An appropriate Order shall issue.

---

4. Plaintiffs have conceded that their § 12 claim under the 1933 Securities Act is invalid.

5. Defendants' request for an order compelling arbitration of the state claims is also granted in light of the state court's prior holding in this action and plaintiffs' lack of opposition to such.