Martha F. REED, Plaintiff,

v.

BEAR, STEARNS & CO., INC., Defendant.

Civ. A. No. 88–2040–O.

United States District Court, D. Kansas.

Aug. 19, 1988.

Bruce Keplinger, Payne & Jones, Chartered, Overland Park, Kan., for plaintiff.

W. Woody Schlosser, Smith, Gill, Fisher & Butts, Kansas City, Mo., David A. Jacobson, Richard C. Anderl, Kutak, Rock & Campbell, Omaha, Neb., Frank A. Taylor, New York City, Frank W. Lipsman, Smith, Gill, Fisher & Butts, Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on two motions to compel arbitration brought by the defendant Bear, Stearns and Company, Inc. (Bear Stearns). The plaintiff Martha F. Reed (Reed) brought this action against Bear Sterns in connection with a margin securities account she held with the firm. Bear Stearns initially seeks an order compelling arbitration of the state law claims included in Reed's complaint: breach of contract (count 1), breach of a fiduciary duty (count 2), common law fraud, negligence, and conversion (count 3), and violations of Kansas securities laws (count 7). Bear Stearns additionally seeks an order compelling arbitration of the federal securities laws claims included in the complaint: violations of section 12(2) of the Securities Act of 1933 (count 4), violations of section 17(a) of the 1933 Act (count 5), and violations of section 10(b) of the Securities Exchange Act of 1934 and rule 10b–5 of the Securities Exchange Commission (SEC) (count 6).

The facts giving rise to Reed's claims and Bear Stearns' motions are as follows: Reed signed several written documents in opening her accounts with Bear Stearns. Among these documents was a Customer Agreement, which provided that Reed would buy and sell securities on margin through Bear Stearns. The Customer Agreement also included an arbitration clause:

> Any controversy arising out of or relating to your account in connection with transactions between us or pursuant to this Agreement or the breach thereof shall be settled by arbitration in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc., the Board of Governors of the New York Stock Exchange, Inc. or the Board of Governors of the American Stock Exchange, Inc. as you may elect. If you do not make such election by registered mail addressed to Bear Stearns at 55 Water Street, New York, New York 10041, Attention: Director Legal and Compliance Department, within five days after demand by Bear Stearns that you make such election, then Bear Stearns may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court

having jurisdiction thereof. You understand that this Agreement to arbitrate does not constitute a waiver of your right to a judicial forum where such waiver would be void under the securities laws and specifically does not prohibit you from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction.

Pursuant to the documents, Bear Stearns transacted business by way of the mail and wire communication systems. On January 26, 1988, Reed filed her complaint against Bear Stearns, seeking damages in connection with Bear Stearns' alleged mismanagement of the account during the period surrounding the October 1987 stock market crash. Bear Stearns' answer specifically states that Bear Stearns does not waive its right to demand arbitration of the matter.

I. *The State Law Claims.*

Reed's complaint alleges claims under state common law and the Kansas securities laws. Her claims for breach of contract, breach of a fiduciary duty, fraud, negligence, and conversion may, for purposes of the motion to compel arbitration, be considered as a unit.

■ A contract dealing with margin securities accounts involves commerce, *see Wilko v. Swan,* 346 U.S. 427, 430, 74 S.Ct. 182, 184, 98 L.Ed. 168 (1953), and the Federal Arbitration Act provides that arbitration clauses in contracts involving commerce are valid and enforceable. 9 U.S.C. § 2. Reed's response to the motion to compel asserts that the arbitration clause is unenforceable because it is unconscionable. However, no evidence supports this assertion, and the assertion itself is insufficient in light of the strong favor paid to arbitration in recent Supreme Court decisions. *See, e.g., Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *see also, Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282, 286 (9th Cir.1988) ("The strong federal policy favoring arbitration, coupled with the extensive regulatory oversight performed by the SEC in this area, compel the conclusion that agreements to arbitrate ... are not unconscionable as a matter of law."); *Surman v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 733 F.2d 59, 61 n. 2 (8th Cir.1984) ("There is certainly nothing inherently unfair about the arbitration clauses, and they are therefore valid and enforceable."); *Brener v. Becker Paribas, Inc.,* 628 F.Supp. 442, 446 n. 3 (S.D.N.Y. 1985) ("There is nothing inherently unfair or oppressive about arbitration clauses."). Thus, the agreement is enforceable.

Further, section 4 of the Arbitration Act compels arbitration in disputes arising under a contract including a valid arbitration clause:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 [28 USC §§ 1 et seq.], in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and *upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.*

9 U.S.C. § 4 (emphasis added). Here, the making of the agreement is not disputed: Reed does not contest that she signed the Customer Agreement, which includes the arbitration clause. *See Villa Garcia v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 833 F.2d 545, 546 (5th Cir.1987) (a court considering whether to compel arbitration initially should determine whether the parties agreed to arbitrate the dispute in question). Thus, section 4 directs the court to compel arbitration.

In addition to the mandate of section 4 of the Arbitration Act, the court is guided by

the Supreme Court's decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The Court stated: "The Arbitration Act requires district courts to compel arbitration of pendant arbitrable claims when one of the parties files a motion to compel, even where the result would be possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 217, 105 S.Ct. at 1240. Thus, under *Byrd*, this court must compel arbitration of Reed's claims in counts 1, 2, and 3.

In her response to the motion to compel, Reed raises an additional argument against compelling arbitration: the claims in counts 1, 2, and 3 are implied under the federal securities laws because they allege violations of New York Stock Exchange (NYSE) and National Association of Securities Dealers (NASD) rules.[1] Neither Reed's response nor her complaint mention any specific rules which were violated, and we are persuaded that the claims, as pleaded, are properly characterized as state common law claims. Reed requests that if we reach this conclusion, she be allowed to amend her complaint. Under Federal Rule of Civil Procedure 15, leave to amend "shall be freely given." Fed.R.Civ.P. 15(a). Although "this mandate is to be heeded," the court need not allow amendment of a complaint where the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Here, an amendment to allege claims arising under NYSE and NASD rules would be futile. No private right of action exists for violations of unspecified NYSE and NASD rules. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 679 (9th Cir.1980) (stating generally that no private cause exists for rules violations, and focusing specifically on the NYSE "know your customer" rule and the NASD "suitability rule"); *Newman v. Rothschild*, 651 F.Supp. 160, 162 (S.D.N.Y.1986) (no private cause of action exists under the "suitability rules" of the NYSE and NASD); *Finne v. Dain Bosworth, Inc.*, 648 F.Supp. 337, 342 (D.Minn.

1986) ("NYSE and NASD rules do not confer a private cause of action."); *Shahmirzadi v. Smith Barney, Harris, Upham & Co.*, 636 F.Supp. 49, 51 (D.D.C.1985) (no private cause exists for violations of unspecified NYSE and NASD rules). Thus, the court will not grant Reed leave to amend her complaint.

In summary, the state law claims in counts 1, 2, and 3, which are properly characterized as common law claims, must be submitted to arbitration because of the mandate of section 4 of the Arbitration Act and the Supreme Court's ruling in *Byrd*.

■ Reed's complaint also includes a claim for violations of the Kansas securities laws, and Bear Stearns moves the court to compel arbitration of this claim. Reed relies on the language of the arbitration clause and a Kansas statute in opposing arbitration. The clause states:

> You understand that this Agreement to arbitrate does not constitute a waiver of your right to a judicial forum where such waiver would be void under the securities laws and specifically does not prohibit you from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction.

This language is somewhat ambiguous because it mentions both "the securities laws" and "the federal securities laws." Reed asserts that the ambiguity should be resolved against Bear Stearns, the drafter of the Customer Agreement. Thus, a waiver of the right to a judicial forum would be invalid if proscribed by state law. However, ambiguities in arbitration agreements are resolved in favor of arbitration. *Moses H. Cone Memorial Hospital*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983); *Austin Municipal Securities, Inc. v. National Association of Securities Dealers, Inc.*, 757 F.2d 676, 696 (5th Cir. 1985); *S.A. Mineracao da Trinidade–Samitri v. Utah International, Inc.*, 745 F.2d 190, 194 (2d Cir.1984). Therefore, without independent indications of contrary intent,

---

1. The court may dispense with this argument without addressing whether claims of federal securities laws violations must be compelled to arbitration. This issue is discussed below in Part II.

the court must construe the clause as referring only to federal securities laws, not to state securities laws proscribing arbitration.

Nevertheless, the clause, although not referring to state law, would be rendered ineffective by a valid state law proscribing compelled arbitration of state securities laws claims. Reed asserts that the Kansas securities laws include such a proscription. The Kansas statute provides that an allegedly defrauded buyer of securities "may sue either at law or in equity," K.S.A. 17–1268(a), and that "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this Act or any rule or regulation or order hereunder is void." *Id.* at 17–1268(d).

■ However, the Kansas statute, if interpreted to disallow arbitration of Kansas securities laws claims, is preempted by the supremacy clause of the Constitution. In *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Supreme Court addressed the effect of a California statute which allegedly invalidated arbitration clauses in franchise agreements. The California Franchise Investment Law provided as follows:

Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void.

Cal.Corp.Code § 31512 (West 1977). The statute is nearly identical to the Kansas statute in the instant case. The California Supreme Court interpreted the statute to require judicial consideration of claims brought under the state franchise statute, and it thus held invalid the parties' agreement to arbitrate. *Southland*, 465 U.S. at 10, 104 S.Ct. at 858. The Supreme Court reversed. It held that in enacting section 2 of the Arbitration Act, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* Thus, the state statute could not invalidate the parties' agreement to arbitrate.

The court is convinced that the same reasoning applies and the same result should be reached in the instant case. The Kansas statute cannot invalidate Congress' mandate that arbitration clauses are to be enforced. *See Osterneck v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 841 F.2d 508 (3d Cir.1988) (holding that the Arbitration Act preempts a Pennsylvania statute precluding compelled arbitration of state securities claims).

Additionally, the Supreme Court's reasoning in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), supports this court's conclusion that the Kansas statute does not invalidate the arbitration clause. In *McMahon*, the Court held that section 29(a) of the 1934 Act does not invalidate arbitration clauses. Section 29(a) states as follows:

Any condition, stipulation, or provision binding any person to waive compliance with any provision of this title or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

15 U.S.C. § 78cc(a). Section 27 of the 1934 Act provides that district courts have exclusive jurisdiction over violations of the 1934 Act. 15 U.S.C. § 78aa. The McMahons argued that read together, these sections invalidate the parties' agreement to arbitrate. The Court disagreed, stating that section 29(a) prohibits only the waiver of substantive rights; by its terms, section 27 is merely jurisdictional, and thus its waiver is not a violation of section 29(a). *McMahon*, 482 U.S. at ——, 107 S.Ct. at 2337–39, 96 L.Ed.2d at 194–95. The Court further stated that " '[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitrable, rather than a judicial, forum.' " *Id.* 482 U.S. at ——, 107 S.Ct. at 2339, 96 L.Ed.2d at 196 (quoting *Mitsubishi Motors Corp. v. Soler–Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)). Similarly, the phrase

in K.S.A. 17–1268(a) stating that an allegedly defrauded buyer of securities "may sue either at law or in equity" is properly interpreted as a jurisdictional phrase. It affords the buyer no substantive rights beyond those announced elsewhere in the section or the Kansas statute. Thus, enforcement of the arbitration clause does not violate the mandate of K.S.A. 17–1268(d) that the provisions of the Kansas statute cannot be waived, because the substantive provisions of the Kansas statute will be enforced at arbitration.

In summary, the claim for violations of the Kansas securities laws is arbitrable because the arbitration clause must be broadly construed, Kansas law cannot abrogate the congressional policy favoring arbitration, and the arbitration clause is properly interpreted as in accordance with the Kansas statute.

## II. *The Federal Claims.*

Reed's complaint asserts claims under the 1933 Act and the 1934 Act. Bear Stearns moves the court to compel arbitration of these federal securities laws claims.

### A. *Background.*

In *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that an arbitration clause cannot be enforced to compel arbitration of a claim arising under section 12(2) of the 1933 Act. A number of courts, including the Tenth Circuit, extended this holding to claims arising under section 10(b) of the 1934 Act and Rule 10(b)–5 promulgated thereunder. *See, e.g., Sterne v. Dean Witter Reynolds, Inc.,* 808 F.2d 480 (6th Cir. 1987); *Wolfe v. E.F. Hutton & Co.,* 800 F.2d 1032 (11th Cir.1986); *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith,* 797 F.2d 1197 (3d Cir.1986); *King v. Drexel, Burnham, Lambert, Inc.,* 796 F.2d 59 (5th Cir.1986); *Conover v. Dean Witter Reynolds, Inc.,* 794 F.2d 520 (9th Cir.1986); *McMahon v. Shearson/American Express, Inc.,* 788 F.2d 94 (2d Cir.1986), *rev'd,* 482 U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Merrill Lynch, Pierce, Fenner & Smith v. Moore,* 590 F.2d 823 (10th Cir.

1978). These extension of the *Wilko* holding were recently abrogated by the Supreme Court's decision in *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). In *McMahon,* the Court held that a pre-dispute arbitration agreement is enforceable as to a claim brought under section 10(b) of the 1934 Act. *Id.* Although recognizing that *Wilko* was at least partially based on an outdated mistrust of arbitration, *see id.* 482 U.S. at ——, 107 S.Ct. at 2338, 96 L.Ed.2d at 195, the *McMahon* Court had no 1933 Act claim before it, and it declined to expressly overrule the *Wilko* holding that agreements to arbitrate are unenforceable as to 1933 Act claims. *See id.* 482 U.S. at ——, 107 S.Ct. at 2341, 96 L.Ed.2d at 199.

### B. *SEC Rule 15c2–2 and the Final Sentence of the Arbitration Clause.*

Prior to the *McMahon* holding, the SEC adopted Rule 15c2–2. The rule, which was repealed after *McMahon,* provided as follows:

(a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

17 C.F.R. § 240.15c2–2(a) (1987). The rule reflected the former state of the law under *Wilko* and its extensions: Arbitration agreements were unenforceable as to claims brought under the 1933 Act and the 1934 Act. *Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 795 F.2d 1393, 1398 n. 17 (8th Cir.1986). Rule 15c2–2 was a notice provision enacted to insure that securities brokers would not mislead customers to believe that they had no remedy in court. *See Ketchum v. Almahurst Blood Stock IV,* 685 F.Supp. 786, 794 (D.Kan.1988).

The final sentence of the arbitration clause in the Customer Agreement reads as follows:

You understand that this Agreement to arbitrate does not constitute a waiver of your right to a judicial forum where such waiver would be void under the securities laws and specifically does not prohibit you from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction.

This sentence was likely included so that the clause would comply with Rule 15c2-2. Nevertheless, Reed correctly asserts that no matter the reason for the sentence's inclusion, the parties are now bound by it. Reed additionally asserts that the final portion of the last sentence indicates that arbitration is merely an option with regard to federal securities laws claims. However, the court finds that under the arbitration clause, including the final sentence, federal securities laws claims must be submitted to arbitration where such arbitration is permitted by federal law.

The arbitration clause should, to the extent possible, be interpreted so as to give reasonable meaning to all parts of the clause. *See Morgan v. Mobil Oil Corp.,* 726 F.2d 1474, 1477 (10th Cir.1984) (Kansas law dictates that documents be interpreted as a whole and not by analysis of isolated provisions); *see also Ryan v. Liss, Tenner & Goldberg Securities Corp.,* 683 F.Supp. 480, 483 (D.N.J.1988) (an arbitration clause should be interpreted so as to give meaning to all of its parts). The first sentence of the clause states that "[a]ny controversy ... relating to [Reed's] account ... shall be settled by arbitration...." (emphasis added). This sentence would be without effect if the last sentence is interpreted to mean that arbitration is optional for claims arising under the federal securities laws, as Reed suggests. Thus, general rules of contract interpretation suggest that the final

sentence does not make arbitration of federal securities laws claims optional.

Further, as discussed above, arbitration agreements are to be broadly construed, and any ambiguities should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital,* 460 U.S. at 24–25, 103 S.Ct. at 941–942. Thus, the court interprets the clause to include an agreement to arbitrate federal securities laws claims where federal law permits arbitration.

The court's conclusion is supported by *Ryan v. Liss, Tenner & Goldberg Securities Corp.,* 683 F.Supp. 480 (D.N.J.1988). In *Ryan,* the district court interpreted a clause nearly identical to the one in the Customer Agreement "to include an agreement to arbitrate federal securities claims where such arbitration is permissible under the law." *Id.* at 484. This court has found no other case law construing clauses such as the one in the Customer Agreement,[2] and we are persuaded that the *Ryan* result is correct. Thus, an agreement to arbitrate exists, and we must determine whether federal law permits arbitration of Reed's federal securities laws claims.

### C.  *The 1934 Act Claim.*

■ In count 6 of her complaint, Reed asserts a claim for alleged violations of section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder. This claim must be arbitrated. *McMahon,* 482 U.S. at ——, 107 S.Ct. at 2344, 96 L.Ed.2d at 202.

### D.  *The 1933 Act Claims.*

■ In counts 4 and 5 of her complaint, Reed asserts claims for alleged violations of section 12(2) and 17(a) of the 1933 Act. As discussed above, *Wilko* proscribed compelled arbitration of 1933 Act claims, and

---

**2.** The arbitration agreements at issue in other cases vary, in differing degrees, from the clause in the Customer Agreement. In some cases, the agreement to arbitrate is quite clear. *See, e.g., McMahon,* 482 U.S. at ——, 107 S.Ct. at 2335, 96 L.Ed.2d at 191 (at issue was an arbitration clause which stated: "Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts ... shall be settled by arbitration."). In other cases, courts

have determined that no agreement to arbitrate exists. *See, e.g., Leicht v. Bateman Eichler, Hill Richards, Inc.,* 848 F.2d 130, 133 (9th Cir.1988) (at issue was an arbitration clause which stated: "The undersigned understands that he is not required to arbitrate any dispute or controversy that arises under the federal securities laws but instead can resolve any such dispute or controversy through litigation in the courts.").

*McMahon* declined to expressly overrule the *Wilko* holding.

Following *McMahon*, a number of district and circuit courts have addressed the viability of *Wilko*. *Compare, e.g., Rodriguez De Quijas v. Shearson/Lehman Brothers, Inc.*, 845 F.2d 1296, 1299 (5th Cir.1988) (1933 Act claims are arbitrable) *and Staiman v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 673 F.Supp. 1009, 1011 (C.D.Cal.1987) (same) *and Aronson v. Dean Witter Reynolds, Inc.*, 675 F.Supp. 1324, 1326 (S.D.Fla.1987) (same) *with Chang v. Lin*, 824 F.2d 219, 222 (2d Cir. 1987) (1933 Act claims are not arbitrable) *and Schultz v. Robinson–Humphrey/American Express, Inc.*, 666 F.Supp. 219, 220 (M.D.Ga.1987) (same) *and Continental Service Life & Health Ins. Co. v. A.G. Edwards & Sons, Inc.*, 664 F.Supp. 997, 1001 (M.D.La.1987) (same) *and McCowan v. Dean Witter Reynolds, Inc.*, 682 F.Supp. 741, 743 (S.D.N.Y.1987) (same) *and Goldberg v. Drexel, Burnham, Lambert, Inc.*, 1987 Westlaw 31604 (E.D. Ill. Dec. 16, 1987) (same) *and Helfricht v. Jefferies & Co.*, 1987 Westlaw 14777 (D.N. J. Oct. 14, 1987) (same).

Against this background, this court recently addressed the enforceability of a clause compelling arbitration of 1933 Act claims in *Ketchum v. Almahurst Bloodstock IV*, 685 F.Supp. 786 (D.Kan.1988). We held that 1933 Act claims are not arbitrable for three reasons. *See id.* at 792–93. First, the Supreme Court in *McMahon* specifically declined to overrule the *Wilko* holding that 1933 Act claims are not arbitrable. Second, the legislative history behind the 1934 Act and its amendments indicates that Congress implicitly ratified the *Wilko* holding. Third, an arguable distinction exists between claims arising under section 12(2) of the 1933 Act and section 10(b) of the 1934 Act, and this distinction may support differing positions regarding arbitration under the two Acts. Thus, we concluded that although a reasonable argument could be made to support arbitration of 1933 Act claims, the better conclusion was that such claims are not arbitrable.

Since our decision in *Ketchum* two important cases have been decided. In *Rodriguez De Quijas v. Shearson/Lehman Brothers, Inc.*, 845 F.2d 1296 (5th Cir. 1988), the Fifth Circuit held that 1933 Act claims are arbitrable. The court stated:

> The Supreme Court opinion in *McMahon*, which binds us here, turns solely on the adequacy of arbitration to resolve securities disputes. It does not distinguish between the [1934] Act and the [1933] Act. Furthermore, it has been the position of this Court that, for the purposes of arbitration, similarities between the [1933] Act and the [1934] Act outweigh any differences between them. *Sibley v. Tandy Corp.*, 543 F.2d 540, 543 n. 3 (1976). We thus follow the reasoning of the Supreme Court in *McMahon* and our own decision in *Noble* [*v. Drexel, Burnham, Lambert, Inc.*, 823 F.2d 849, 850 n. 3 (5th Cir.1987) (stating that *"McMahon* undercuts every aspect of *Wilko"* and that "a formal overruling of *Wilko* appears inevitable—or, perhaps, superfluous")] which lead directly to the obsolescence of *Wilko* and the arbitrability of [1933] Act § 12(2) claims.

*Rodriguez De Quijas*, 845 F.2d at 1299.

The Tenth Circuit has briefly alluded to the viability of the *Wilko* holding that 1933 Act claims are not arbitrable. In *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464 (10th Cir.1988), the court stated that "[i]n *McMahon*, the Supreme Court essentially overruled *Wilko*." *Id.* at 466 (citing *Rodriguez De Quijas*, 845 F.2d 1296). *Peterson* only involved 1934 Act claims, thus making the court's statement regarding *Wilko* (which addresses 1933 Act claims) dicta. However, the court inferred that if presented with the issue of the arbitrability of 1933 Act claims, it would follow the Fifth Circuit's lead and hold that in light of *McMahon*, *Wilko* is no longer good law.

In light of these cases, this court is compelled to abandon its earlier position that 1933 Act claims are not arbitrable. Frankly, the court struggled to determine the appropriate outcome on the arbitrability issue in the *Ketchum* case. Given an indica-

tion of the Tenth Circuit's likely position, and given the sound reasoning which we admitted underlies the position we rejected in *Ketchum, see Ketchum,* 685 F.Supp. at 792, we have little difficulty in now holding that 1933 Act claims are arbitrable. Thus, the court concludes that Reed's 1933 Act claims included in counts 4 and 5 of her complaint must be arbitrated.

In summary, the court finds that Reed's common law claims, Kansas securities laws claim, 1934 Act claim, and 1933 Act claims must be submitted to arbitration in accordance with the Customer Agreement.

IT IS THEREFORE ORDERED that Bear Stearns' motion to compel arbitration of Reed's state law claims is granted.

IT IS FURTHER ORDERED that Bear Stearns' motion to compel arbitration of Reed's federal securities laws claims is granted.