**Gerald J. SCHER, Plaintiff,**

v.

**BEAR STEARNS & CO., INC. and Lawrence J. Friedlander, Defendants.**

No. 88 Civ. 7620 (PKL).

United States District Court, S.D. New York.

Oct. 19, 1989.

Schwartzfeld, Ganfer & Shore, New York City (Neal Schwartzfeld, Marc D. Powers, of counsel), for plaintiff.

Stroock & Stroock & Lavan, New York City (Melvin A. Brosterman, Pat S. Conti, of counsel), for defendants.

### ORDER & OPINION

LEISURE, District Judge.

This action arises from defendants' alleged mishandling of plaintiff's bond trading account. Plaintiff alleges that defendant, through excessive trading, misrepresentation, and poor trading decisions, caused plaintiff to suffer severe losses in his account.

The first issue before the Court is whether plaintiff's claims must be arbitrated pursuant to a customer agreement that plaintiff signed upon opening his account with defendants ("Customer Agreement"). The

law involving the arbitration of claims arising under the federal securities laws has been in a state of metamorphosis in recent years and appears to be still in evolution. This evolutionary process has resulted in numerous disputes testing the reach and breadth of arbitration clauses in securities matters, not dissimilar to the one presented herein. Litigants and the courts have sought to fashion the appropriate jurisdictional limits of arbitration in these matters in light of the changes in the legal standards.

The parties also raise a second, and legally clearer, issue. Plaintiff claims that regardless of the arbitrability of any of its claims against defendant Bear Stearns & Co., Inc. ("Bear Stearns"), none of his claims against defendant Lawrence J. Friedlander ("Friedlander"), whether common law or statutory, are subject to arbitration. Defendants assert, however, that the arbitration clause at issue covers not only claims against Bear Stearns, but also claims against employees of Bear Stearns arising out of transactions for which the arbitration agreement was signed.

BACKGROUND

In 1985, plaintiff Gerald Scher ("Scher") was looking for a sound investment under the then prevailing market conditions, and decided to invest in municipal bonds. In or about May of that year, Scher opened a municipal bond trading account with Bear Stearns, and initially purchased a bond with a face value of $250,000. Complaint ¶¶ 6, 7. At or about the time Scher opened the account with Bear Stearns, he executed the Customer Agreement which contained, among numerous other clauses, an arbitration agreement, which will be examined in detail below.

At the time the account was opened, or soon thereafter, Friedlander became the representative on Scher's account and contacted Scher about other investment opportunities. Def. Memorandum p. 4; Complaint ¶¶ 8, 9, 10. Scher agreed to participate in at least one of the investments offered by Friedlander, and, accordingly, Scher began to keep large amounts of cash in his account at Bear Stearns, ranging from between $1,000,000 and $4,000,000, during the period of his dealings with Bear Stearns. Complaint ¶¶ 14, 15. Scher alleges that Friedlander, in handling Scher's account, made numerous misrepresentations regarding the risk involved and the status of the account, made excessive trades in the account in order to increase defendants' transactional profits, selected unwise and unduly risky investments, and consistently failed to consult Scher about actions taken on the account. Complaint ¶¶ 17, 18, 19, 20. Scher claims that as a result of this misconduct he suffered losses in excess of $1,500,000.

Scher commenced this action on October 27, 1988. The first and fifth claims for relief alleged violations of the federal securities laws. The second, third, fourth, and sixth claims for relief allege common law causes of action for breach of fiduciary duty, breach of contract, negligence, and fraud. On February 1, 1989, pursuant to the arbitration clause contained in the Customer Agreement, Scher agreed to withdraw the second, third, fourth, and sixth claims for relief against Bear Stearns—all of which constitute state common law causes of action—and submit those common law claims to arbitration. Scher refused, however, to submit to arbitration the first and fifth claims for relief which arise under the federal securities laws. Plaintiff has also refused to submit any of his claims against Friedlander—arising under common or federal law—to arbitration. Defendants have moved to compel arbitration of the federal securities law claims against Bear Stearns and of all claims against Friedlander.

DISCUSSION

1. *Arbitration of Securities Law Claims*

The question of whether the Bear Stearns Customer Agreement signed by Scher mandates the submission to arbitration of claims arising under the federal securities law turns upon a parsing of the language of the contractual arbitration clause in that Customer Agreement. The arbitration clause that the Court is asked to consider reads in relevant part:

Any controversy arising out of or relating to your account in connection with transactions between us or pursuant to this Agreement or the breach thereof shall be settled by arbitration in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc., the Board of Governors of the New York Stock Exchange, Inc. or the Board of Governors of the American Stock Exchange, Inc. as you may elect.... Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. *You understand that this Agreement to arbitrate does not constitute a waiver of your right to a judicial forum where such a waiver would be void under the securities laws and specifically does not prohibit you from pursuing any claim or claims arising under the federal securities law in any court of competent jurisdiction.*

Exhibit A, attached to Hubbert Aff. (emphasis added).

This contractual arbitration clause in whole is similar to clauses previously included in many investment and account agreements throughout the securities industry. These contractual clauses and questions regarding their reach have frequently been before this and other courts in recent years. The issue of the scope of this clause essentially reduces itself to whether the emphasized language above is part of a mere notice provision, or whether it gives a substantive contractual right to litigate federal securities claims regardless of the arbitrability of other related claims.

While the Second Circuit has not yet reached the issue of the scope of this or other similar arbitration clauses, the Court is not without substantial, though not always consistent, guidance from other courts. Before examining the case law, however, it is essential to review briefly the history and context of this semantic dispute.

It was the original teaching of the courts that a party could not contract away its right to a federal judicial forum for claims arising under the securities laws. *See Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (claims under the Exchange Act of 1933) and its progeny. The Securities and Exchange Commission ("SEC") included that position in its own framework in Rule 15c2–2, explicitly excepting claims under the federal securities laws from pre-dispute arbitration agreements. The Rule stated in part:

It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

Former 17 C.F.R. § 240.15c2–2(a) (1987). In compliance with this rule, brokers whose customer agreements provided for arbitration included in their arbitration clauses language specifically noting that federal securities law claims were exempt from the arbitration provisions. The SEC itself provided a form disclosure statement, which could be adopted to comply with the rule. *See,* former 17 C.F.R. § 240.15c2–2(b).

In recent years, there have been significant changes in the relationship of the policies underlying arbitration and the federal securities law. The most important of these changes came in *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), where the Supreme Court held that an arbitration agreement between a broker and a customer is enforceable as to claims arising under the Securities Exchange Act of 1934.[1] In light of *McMahon* the SEC rescinded Rule 15c2–2. *See,* SEC Exchange Act Release No. 25034 [1987 Transfer Binder] Fed Sec.L.Rep. (CCH) ¶ 84,163 (October 15, 1987).

---

1. The ruling in *McMahon* has subsequently been extended to the Securities Act of 1933, explicitly overruling *Wilko. Rodriguez de Quillas v.*

*Shearson/American Express,* —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

Under *McMahon* and *Rodriguez,* and with the withdrawal of Rule 15c2–2, there is no *legal* reason a plaintiff's federal securities laws claims should not be arbitrable. Under current law, the question thus becomes whether there was a contract between these parties to arbitrate federal securities claims. More specifically, the Court must address whether the parties agreed to arbitrate all claims to the full extent allowed under the law—and merely include a notice provision then required that certain claims were non-arbitrable—or whether all federal securities claims were explicitly excluded from the arbitration agreement regardless of the state of the law.

■ Accordingly, it is apparent that this is an issue of contract interpretation. It is fundamental that arbitration agreements are creatures of contract law. *Pompano–Windy City Partners v. Bear, Stearns, Inc.,* 698 F.Supp. 504 (S.D.N.Y.1988). Arbitration contract clauses cannot be interpreted in a policy vacuum, however. Both Congress and the courts have expressed a leaning toward arbitration. Congress first put forward its support of arbitration as a means of dispute resolution in the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* The Arbitration Act created a "federal policy favoring arbitration," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), which requires that courts "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

■ This federal policy in favor of arbitration does not give courts license to compel arbitration where there has been no agreement to arbitrate. Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrys-ler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). Federal policy is not absent from this determination. "As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Id.* The Supreme Court has also directed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone, supra* at 24–25, 103 S.Ct. at 941 (1982). Thus, the Court must read the contractual clause at issue here with an eye toward arbitration.

The cases that have dealt with the specific problem now before this Court have come to a variety of results. This Court has itself recently faced the identical problem of contract interpretation involving a somewhat differently worded arbitration clause. *Stander v. Financial Clearing & Services Corp.,* 718 F.Supp. 1204 (S.D.N.Y. 1989).[2] In that case this Court noted that in reviewing the existing cases, "[a]n approach that seems to be emerging is that the specific contractual language, when compared to the former Rule and SEC formulations, will provide an indication of whether or not the parties intended to create a substantive right to federal litigation, or were merely acknowledging and giving notice to the state of the law as it then existed." 718 F.Supp. at 1208.

As this Court noted in its extensive discussion of this issue in *Stander,* in most of those cases where arbitration has been ordered, the non-waiver provisions have been in language directly tracking former 17 C.F.R. § 15c2–2(b) or otherwise indicating that the provision was designed to give notice of the then existing rights of the

---

**2.** This Court was faced with the identical arbitration clause in *Pompano–Windy City Partners v. Bear, Stearns & Co., Inc.,* 698 F.Supp. 504 (S.D.N.Y.1988). The Court, in deciding that case, did not express any view about whether the language now in issue compelled arbitration of federal securities law claims. The Court simply found that the agreement containing the language now in issue was superceded by other agreements between the parties that did require arbitration of federal securities law claims.

customer. 718 F.Supp. at 1208.[3] In most cases where courts have not compelled arbitration, the language of the contract right to litigate claims has been unmistakably mandatory or substantive. 718 F.Supp. at 1208–09.[4]

This division has not always been applied uniformly. Arbitration clauses with unmistakably mandatory language have been interpreted as mere notice of rights provisions, *See, e.g., DeKuyper v. A.G. Edwards & Sons, Inc.,* 695 F.Supp. 1367, 1368–69 (D.Conn.1987), and clauses which under the division outlined above would be deemed mere notice provisions have been held to grant a substantive right to litigate securities claims. *See, e.g., Leicht v. Bateman Eichler, Hill Richards, Inc.,* 848 F.2d 130, 133 (9th Cir.1988). Nonetheless, this Court has held that the division between mandatory and notice-giving language is an intelligible and appropriate one. *Stander,* 718 F.Supp. at 1208–09.

■ In this case, the Court's attention has been focused by the parties on the last sentence of the arbitration agreement. Plaintiff claims that the language of the arbitration clause, in particular the final portion of the sentence beginning "and specifically ..." creates a substantive exception for claims arising under the federal securities laws from the remainder of the clearly mandatory arbitration clause. Defendants respond by asserting that the entire final sentence of the arbitration clause is a simple notice provision, intended to inform customers of their rights as they existed under Rule 15c2–2 which was in effect when this agreement between plaintiff and defendants was signed, and did not grant plaintiff any substantive right to litigate.

There has been a split among the courts on the language at issue in this matter. At least one court in this district has held that the identical Bear Stearns Customer Agreement did not require individual public customers to arbitrate their federal securities law claims. *Creative Securities Corp. v. Bear Stearns & Co.,* 671 F.Supp. 961 (S.D. N.Y.1987), *aff'd without opinion,* 847 F.2d 834 (2d Cir.1988). In that case Judge Ward explained that "[t]he Court interprets [the language of the Bear Stearns agreement] to provide only that the Customer Agreement itself does not waive a customer's right to sue for securities violations in federal court, not necessarily to grant a right to bring a federal securities action." 671 F.Supp. at 967–68.

Judge Ward's view of the meaning of the arbitration clause in the Bear Stearns agreement has not been generally accepted.[5] In *Reed v. Bear, Stearns & Co., Inc.,* 698 F.Supp. 835 (D.Kan.1988) the court thoroughly analyzed the language of the

---

**3.** *See, e.g., McCowan v. Dean Witter Reynolds, Inc.,* 682 F.Supp. 741, 743 (S.D.N.Y.1987) (addendum to agreement directly tracking the language of former 17 C.F.R. § 15c2.2(b)); *Finkle and Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505, 1507 (S.D.N.Y.1985) (agreement language stating, "I understand I do not waive any rights I may have under the Federal securities laws"); *Ketchum v. Almahurst Bloodstock IV,* 685 F.Supp. 786, 794 (D.Kan.1988) (contract using language identical to former 17 C.F.R. § 15c2–2(b)); *Shotto v. Laub,* 632 F.Supp. 516, 523 (D.Md.1986).

**4.** *See, e.g., Gooding v. Shearson Lehman Bros. Inc.,* 878 F.2d 281, 283 (9th Cir.1989) (agreement states that it "does not apply to any controversy ... for which a remedy may exist ... under certain of the federal securities laws"); *Mignocchi v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 707 F.Supp. 140, 141 (S.D.N.Y.1989) (agreement states, "Except to the extent claims arising under the Federal securities laws may be litigated ... any controversy ... shall be submitted to arbitration"); *Federal Insurance Co. v. Mallardi,* 696 F.Supp. 875, 879 (S.D.N.Y.1988) (agreement states that "[a]ny controversy ... except any claim ... under the federal securities laws shall be settled by arbitration"); *Church v. Gruntal & Co., Inc.,* 698 F.Supp. 465, 468 (S.D.N.Y.1988) (agreement states that arbitration shall not be compelled on "claims asserting violations of the Federal Securities/commodities laws"); *Brick v. J.C. Bradford & Co., Inc.,* 677 F.Supp. 1251, 1254 (D.D.C.1987) (agreement states, "The following agreement to arbitrate does not apply to any controversy ... under the federal securities laws").

**5.** This Court in *Pompano–Windy City, supra,* noted Judge Ward's reading of the Bear Stearns arbitration clause in *Creative Securities.* However, since this Court did not reach the issue of the scope of the language at issue in *Creative Securities* and the case at hand, the Court neither accepted nor rejected Judge Ward's reasoning.

same arbitration clause which is at issue here. The court stated:

> The first sentence of the clause states "[a]ny controversy ... relating to [Reed's] account ... shall be settled by arbitration...." This sentence would be without effect if the last sentence is interpreted to mean that arbitration is optional for claims arising under the federal securities laws ... Thus, general rules of contract interpretation suggest that the final sentence does not make federal securities laws claims optional.

698 F.Supp. at 841. The court also noted that the language in the arbitration clause excluding federal securities claims was probably included simply to give notice of the rights, then provided by 17 C.F.R. § 15c2–2. A similar result was reached in *Ryan v. Liss, Tenner & Goldberg Securities Corp.*, 683 F.Supp. 480 (D.N.J.1988). The court in *Ryan* agreed that the first sentence of the arbitration clause only makes sense if the last sentence is read solely as a notice provision and not as allowing a substantive right to litigate federal securities claims.

This Court, after review of the case law, chooses to follow the logic of *Reed* and *Ryan*. First, the Court finds that the last sentence of the arbitration clause is a notice provision intended to inform customers of their then existing legal rights. While the Court believes that brokers, including Bear Stearns, should update their contracts to reflect major changes in the law, such as the revocation of Rule 15c2–2, to avoid the potential for confusion that is present in this matter, the arbitration clause as written remains binding on the parties as a notice provision. As noted above, this Court in *Stander* found that notice-type provisions have generally been read, in light of the federal policy in favor of arbitration, to permit the arbitration of *all* claims arising under the customer agreements, and *not* excluding claims arising under the federal securities laws. *Stander*, 718 F.Supp. at 1208.

Furthermore, the Court agrees with the analysis of the district judge in *Reed* that the first sentence of the arbitration clause

makes little sense if the final sentence is read to give a substantive right to litigate federal securities claims. Additionally, the Court concludes that the word "understand" at the beginning of the final sentence of the arbitration clause should be a clear indicator to the reader that all which follows is notice and not substance. Accordingly, the Court finds that plaintiffs securities law claims against Bear Stearns should be arbitrated in the manner prescribed in the Customer Agreement.

### 2. Arbitration of Claims Against Friedlander

■ The issue of the relationship of an employee of a brokerage house to a Customer Agreement between the brokerage house and an investor is far more consistent and clear than the law regarding the scope of the arbitration clause. The question is simple: can a disclosed agent of the institutional party to the Customer Agreement benefit from the terms of that agreement, including the mandatory arbitration clause? After a review of the two rather different approaches to the law in this matter taken by the parties, the Court has determined that the Customer Agreement, and thus the arbitration clause, does cover agents of the institutional party. Accordingly, the claims against defendant Friedlander must be arbitrated.

■ Courts in this and other circuits have spoken repeatedly on this precise issue, and, particularly within this circuit, the results have been consistent. Acts by employees of one of the parties to a customer agreement are equally arbitrable as acts of the principals as long as the challenged acts fall within the scope of the customer agreement. *Brener v. Becker Paribas, Inc.*, 628 F.Supp. 442, 451 (S.D.N.Y.1985). *See also Nesslage v. York Securities, Inc.*, 823 F.2d 231, 233 (8th Cir.1987); *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1188 (9th Cir.1986); *Brick v. J.C. Bradford & Co., Inc.*, 677 F.Supp. 1251 (D.D.C.1987); *Jarvis v. Dean Witter Reynolds, Inc.*, 614 F.Supp. 1146, 1150 (D.Vt.1985); *Ross v. Mathis*, 624 F.Supp. 110, 114–115 (N.D.Ga.1985). In

*Brener*, Judge Tenney was faced with a situation quite similar to the one before this Court. In deciding that the claims against the employee were arbitrable under the agreement, Judge Tenney wrote:

> The agreement provides that any controversy arising out of the plaintiffs' accounts will be settled by arbitration. All of the plaintiffs' allegations against [the employee] arise out of his actions as [the broker's] employee in connection with the plaintiffs' accounts. Thus the plaintiffs' claims against [the employee] are based on a controversy arising out of the plaintiffs' accounts, and as such, those claims fall squarely within the scope of the arbitration agreement.

628 F.Supp. at 451. This Court finds Judge Tenney's logic to be direct, sensible, and completely applicable to this case. This is not the only court that has accepted Judge Tenney's view. Judge Ward in *Creative Securities Corp. v. Bear Stearns & Co.,* *supra*, cited *Brener* to find that claims against Bear Stearns partners arising out of transactions covered by a customer agreement were covered by the arbitration clause, even though the partners were not named parties to, nor signatories of, the customer agreement. 671 F.Supp. at 968 n. 11.

The Court's belief that the plain language of the arbitration clause mandates the arbitration of all claims arising out of the customer agreement, including those against a disclosed agent of the institutional party, is bolstered by the Court's understanding of Congress's and the Supreme Court's stated policy in favor of arbitration. If this Court were to allow plaintiff to avoid arbitration of claims arising out of the customer agreement, simply by naming individual agents of the institutional party as defendants, it would in effect ignore both the particular arbitration clause and the explicit federal policy in favor of arbitration. *See Arnold v. Arnold Corp.*, 668 F.Supp. 625, 629 (N.D. Ohio 1987), *vacated without opinion*, 860 F.2d 1078 (6th Cir. 1988).

In the instant case, there is no doubt of Friedlander's relationship to Bear Stearns.

Plaintiff himself necessarily recognizes the agency relationship, describing Friedlander as an "Assistant Director", among other titles, of Bear Stearns. Complaint ¶ 3. By the same token, plaintiff certainly understood the relationship of Friedlander to Bear Stearns as indicated by plaintiff's notation of Friedlander's representations about his position with Bear Stearns. *Id.* Accordingly, the precedents from this district and other courts are applicable. The weight of these precedents is overwhelming. Plaintiff claims in his memorandum in opposition to defendants' motion that New York State agency and contract law mandate a conclusion that the claims against Friedlander are *not* covered by the customer agreement and are thus not arbitrable. This is directly opposite to the conclusion reached by the various federal courts which have reviewed this issue. Further, plaintiff has failed to provide any New York State authority sufficiently on point or compelling to convince this Court to reject the weight of federal court precedent directly on point. Accordingly, this Court finds that plaintiff's claims against Friedlander should be arbitrable pursuant to the requirements of the Customer Agreement.

## CONCLUSION

Defendants' motion to compel arbitration of claims arising under the federal securities laws against Bear Stearns is GRANTED.

Defendant Friedlander's motion to compel arbitration of all claims against him arising under the Customer Agreement is GRANTED.

Prosecution of this matter is stayed pending the conclusion of the arbitration proceedings.

SO ORDERED.