**Gertrude STANDER, Plaintiff,**

**v.**

**FINANCIAL CLEARING & SERVICES CORPORATION, Domestic Arbitrage Group, Inc., Rushmore Securities, Jerry W. Czin and John Does Nos. 1–10, Defendants.**

**No. 88 Civ. 1350 (PKL).**

United States District Court, S.D. New York.

Aug. 10, 1989.

Curtis, Mallet–Prevost, Colt & Mosle, New York City (Eliot Lauer, Donald L. Shuck, Jr., David R. Fredrickson, of counsel), for plaintiff.

Bressler, Amery & Rothenberg, New York City (Brian F. Amery, of counsel), for

defendants Domestic Arbitrage Group, Inc., Rushmore Securities and Jerry W. Czin.

Gaston & Snow, New York City (Eva H. Posman, of counsel), for defendant Financial Clearing & Services Corp.

LEISURE, District Judge.

The claims in this action arise from defendants' allegedly fraudulent and improper trading in securities. Plaintiff alleges that her entire investment in an account operated by defendants was eliminated, and substantial deficits generated, during the precipitous decline of the stock market in the fall of 1987.

The first issue before the Court is the threshold consideration of whether the claims must be arbitrated, pursuant to contracts executed in connection with plaintiff's account. The law involving arbitration of claims under the federal securities laws has undergone significant evolution in recent years. These shifting conceptions have generated numerous procedural and jurisdictional disputes such as the present one, as courts, institutions and individual investors seek to ascertain and redefine the contours of permissible arbitration in light of the changing standards.

Additionally, if it were determined that the securities claims should proceed in this court, defendant Financial Clearing & Services Corporation ("FiCS") has moved to dismiss those claims under Fed.R.Civ.P. 9(b) and 12(b)(6), and plaintiff has cross-moved to compel discovery.

## BACKGROUND

Plaintiff Gertrude Stander ("Stander") is an elderly widow with little experience in securities investments. Defendant Jerry W. Czin ("Czin") was an account executive, and registered representative, with defendant Domestic Arbitrage Group, Inc. ("Domestic"). Domestic was a non-clearing, or introducing, securities brokerage firm. Defendant Rushmore Securities ("Rushmore") was the retail securities division of Domestic. Shortly after the events which gave rise to the claims in this lawsuit, Domestic apparently ceased doing business.

Defendant Financial Clearing & Services Corporation ("FiCS") is a carrying, or clearing, broker.[1] Clearing brokers typically perform mechanical "back office" type functions related to the clearance and settlement of transactions in the accounts of an introducing broker's customers. During the relevant period, FiCS was party to a contractual agreement with Domestic, whereby FiCS would provide such processing and administrative services in order for Domestic to transact business on behalf of its customers. See, Exhibit E (the "Clearing Agreement"), attached to Affidavit of Donald L. Shuck, Jr., Esq., sworn to on June 24, 1988 ("Shuck Aff."). Plaintiff alleges, and argues, that the specific role of FiCS in this case went beyond that of a normal clearing broker. See, e.g., Complaint ¶¶ 16, 17, 20, 24, 29, 30; Plaintiff's Memorandum, pp. 14–16. If true, such allegations would certainly bear on the merits of the underlying claims.

In order to open her account with Domestic, which would be serviced by FiCS, Stander was required to execute various agreements. Specifically, there were three separate agreements: a Customer Agreement, Margin Agreement and Options Agreement (collectively the "customer agreements"). See Complaint ¶ 16. The forms for these customer agreements were provided by FiCS, and FiCS required Domestic to provide executed customer agreements before an account would be serviced. See, Section 4.1 of the Clearing Agreement. The customer agreements constituted binding contracts between the individual customer and FiCS. Stander signed the agreements on May 8, 1987. See, Exhibit B, attached to Affidavit of Timothy E. Longworth, sworn to on May 27, 1988.

The Customer Agreement included an arbitration clause, as well as a provision whereby the customer would make payments for deficiencies in her account to FiCS, upon demand for such payments by FiCS. Between July 1987 and October

---

1. There are also "John Doe" defendants, who are officers and employees of FiCS. References to "FiCS" here will include those parties, unless the context indicates otherwise.

1987, FiCS made four such demands. *See* Complaint ¶¶ 20, 24, 27, 28. On October 19, 1987, plaintiff was asked to deposit an additional $211,747 in her account. Complaint ¶ 28. One week later, FiCS notified plaintiff that Domestic had ceased to be an active broker-dealer, but that FiCS would continue to carry her account. The demand for payments on the debit balance was renewed, and FiCS indicated an intention to liquidate any remaining equity positions. Complaint ¶ 29. The next day, FiCS notified plaintiff by telegram that it had liquidated plaintiff's account, and the account still reflected a debit balance of $274,166.93.

Plaintiff commenced this action on February 26, 1988. On March 3, 1988, FiCS filed a statement of claim against plaintiff with the director of arbitration at the New York Stock Exchange, Inc. ("NYSE"). *See,* Exhibit A, attached to the Affidavit of Eva H. Posman, Esq. ("Posman Aff."). The position of FiCS, and the other defendants, is that the dispute is arbitrable pursuant to the arbitration provision of the Customer Agreement. All defendants have moved to compel arbitration.

On March 31, 1988, FiCS agreed to stay the arbitration pending resolution by this Court of the question of arbitrability of plaintiff's claims. *See,* Exhibit B, attached to Posman Aff. The NYSE granted that request for a stay. *See* Exhibit C, attached to Posman Aff. On May 24, 1988, counsel for plaintiff agreed to arbitration of all of claims except those arising under the federal securities laws. *See,* Posman Aff. ¶ 6; Exhibit D attached to Posman Aff. The question of the arbitrability of that securities claim remains before the Court, as well as defendant FiCS' motions to dismiss under Fed.R.Civ.P. 9 and 12, and plaintiff's motion to compel discovery.

## DISCUSSION

### 1. *Arbitration.*

This aspect of the dispute turns upon the contractual arbitration clause contained in the Customer Agreement. Accordingly, the language of that agreement is crucial, and in relevant part reads as follows:

> To the extent permitted by law, any controversy arising out of or relating to any of my account(s) with FiCS and/or the Introducing Firm or this agreement *except controversies arising under the federal securities laws, shall be submitted to arbitration* conducted under the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc., or the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. or the arbitration panel of any other exchange which has jurisdiction over the transaction in dispute, as I may elect.

Exhibit D, attached to Shuck Aff. (emphasis added).

This contractual arbitration provision, as well as the highlighted qualifying phrase, is of a type previously included in most investment and account contracts throughout the securities industry. This issue essentially reduces to the question of whether the emphasized language is a mere notice provision, or whether it reflects a substantive contractual right to litigate federal securities claims.

Although the Second Circuit has not yet ruled on this specific point, the Court here does not write upon a clean slate. The problem presented by this suit has been termed "distressingly common," *Brick v. J.C. Bradford & Co., Inc.,* 677 F.Supp. 1251 (D.D.C.1987), and the various courts which have previously addressed the issue provide some guidance. Before examining those cases, however, a brief review of the context of the dispute, and how it arose, is necessary.

For many years, the law in this and other circuits was that a party could not contract away its right to a federal forum for any claims arising under the federal securities laws. *See, Wilko v. Swann,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (claims under the Securities Act of 1933). In accord with that position, the Securities Exchange Commission ("SEC") promulgated Rule 15c2–2, which excepted claims under the federal securities laws from pre-dispute arbitration agreements. That Rule read as follows:

It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

Former 17 C.F.R. § 240.15c2–2(a) (1987). In order to comply with the rule, brokers whose customer agreements provided for predispute arbitration routinely included language specifically excepting federal securities law claims. The SEC itself provided a form disclosure statement, which could be adopted to comply with the rule. *See,* former 17 C.F.R. § 240.15c2–2(b).

Since the enactment of that rule, however, conceptions of the interaction of the respective policies underlying arbitration and the federal securities laws have significantly changed. The Supreme Court in *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) definitively resolved the issue of claims under the Securities Exchange Act of 1934, in holding that a written arbitration agreement between a customer and a broker is enforceable as to claims under that Act.[2] Following the *McMahon* decision, the SEC rescinded Rule 15c2–2. *See,* SEC Exchange Act Release No. 25034 [1987 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 84,163 (October 15, 1987).

Under current law, there is nothing about the *nature* of these claims that would preclude their arbitration. The issue here is one of contract interpretation: did the parties reach a substantive agreement that securities law claims could not be arbitrated? Or did they agree to arbitrate their claims to the full extent allowed by the law, and merely included a mandated notice provision regarding securities claims which became superfluous upon subsequent evolution of the law?

It is fundamental that arbitration is a creature of contract. Interpretation of an arbitration clause, however, involves broader public and federal policies, which have been commented upon extensively by the courts. In passing the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.,* Congress sought to "revers[e] centuries of judicial hostility to arbitration agreements ... [and] place arbitration agreements 'upon the same footing as other contracts.'" *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2452–53, 41 L.Ed.2d 270 (1974) (*quoting* H.R.Rep. No. 96, 68th Cong., 1st Sess. 1, 2 (1924)). *See also, McMahon, supra,* 482 U.S. at 225–26, 107 S.Ct. at 2336–37. While arbitration agreements may be "as enforceable as other contracts, but not more so," *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967), there is a long recognized, and indisputable, federal policy favoring enforcement of arbitration agreements. *See, e.g., McMahon, supra,* 482 U.S. at 226, 107 S.Ct. at 2337; *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 25, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983); *Genesco, Inc. v. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844 (2d Cir.1987).

In translating this federal policy into principles applicable to interpretation of arbitration clauses, the Supreme Court has stated that "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi, supra,* 473 U.S. at 626, 105 S.Ct. at 3354. Similarly, "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." *Moses H. Cone, supra,* 460 U.S. at 24–25, 103 S.Ct. at 941–42.

**2.** Subsequently, the Supreme Court in *Rodriguez de Quijas v. Shearson/American Express,* —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) expressly overruled *Wilko,* and held that claims under the Securities Act of 1933, as well as the 1934 Act, are arbitrable.

The cases that have dealt with the specific problem presented by this case have come down on all sides of the issue. It is clear, however, that the language of the particular arbitration clause is crucial, as well as the context in which it appears. An approach that seems to be emerging is that the specific contractual language, when compared to the former Rule and SEC formulations, will provide an indication of whether or not the parties intended to create a substantive right to federal litigation, or were merely acknowledging and giving notice to the state of the law as it then existed.

Thus, many of the cases which have held federal securities claims arbitrable have involved contractual language that referred only to a party's "understanding" of non-waiver provisions, presentation of the clause in a subsequent notice-type addendum, direct tracking of former 17 C.F.R. § 15c2–2(b), or a provision that otherwise on its face indicated that notice or disclosure alone was contemplated. *See, e.g., McCowan v. Dean Witter Reynolds, Inc.,* 682 F.Supp. 741, 743 (S.D.N.Y.1987) (subsequent addendum to contract directly tracking the language of former 17 C.F.R. § 15c2–2(b)); *Finkle and Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505, 1507 (S.D.N.Y.1985) (contract stating that "I *understand* that I do not waive any rights I may have under the Federal securities laws") (emphasis supplied); *Reed v. Bear Stearns & Co.,* 698 F.Supp. 835, 841 (D.Kansas 1988) (contract stating that "[y]ou understand that this Agreement does not constitute a waiver of your right to a judicial forum" for securities claims); *Ryan v. Liss, Tenner & Goldberg Securities Corp.,* 683 F.Supp. 480, 484 (D.N.J. 1988) (clause stating that "[i]t is understood" that securities claims may be litigated); *Shotto v. Laub,* 632 F.Supp. 516, 523 (D.Md.1986) (clause reading "I understand that I do not waive any rights I may have under the federal securities laws"); *Ketchum v. Almhurst Bloodstock IV,* 685 F.Supp. 786, 794 (1988) (contract tracking language identical to 17 C.F.R. § 15c2–2(b)). Clauses of this type, taken with the prior SEC rules requiring disclo-

sure and the federal policy favoring arbitration, were sufficient to lead to the conclusion that no substantive right to litigate in a judicial forum was involved.

Conversely, courts have *not* required arbitration where the contract language excluding securities claims from arbitration has been of an unmistakably mandatory or substantive nature. *See, e.g., Federal Insurance Co. v. Mallardi,* 696 F.Supp. 875, 879 (S.D.N.Y.1988) (contract stating that "[a]ny controversy . . . except any claim . . . under the federal securities laws shall be settled by arbitration"); *Church v. Gruntal & Co., Inc.,* 698 F.Supp. 465, 468 (S.D.N.Y.1988) (contract stating that arbitration shall not be mandated on "claims asserting violations of the Federal Securities/commodities laws"); *Brick v. J.C. Bradford & Co., Inc.,* 677 F.Supp. 1251, 1254 (D.D.C.1987) (contract stating that "[t]he following agreement to arbitrate does not apply to any controversy . . . under the federal securities laws").

This approach has not been applied without exception; clauses with unmistakably substantive language have been deemed mere notice of non-waiver, *see, e.g., De-Kuyper v. A.G. Edwards & Sons, Inc.,* 695 F.Supp. 1367, 1368 (D.Conn.1987), and clauses seeming clearly to contemplate only notice have been held to reflect a substantive right to litigate securities claims in a judicial forum. *See, e.g., Leicht v. Bateman Eichler, Hill Richards, Inc.,* 848 F.2d 130, 133 (9th Cir.1988). The Court recognizes that reaching conclusions and drawing distinctions based on what may have been fortuitous phrasing of similar arbitration clauses might, at first blush, appear formalistic or artificial.

■ The only alternative, however, is an overriding assumption regarding every parties' intent in all contracts of a certain type, based solely upon a general public policy. This flies in the face of basic tenets of contract interpretation. It is fundamental that any contract that is unambiguous on its face is presumed to reflect the parties' intent, and the thrust of contract interpretation is to give effect to the expressed intent of the parties. *See, e.g., Breed v.*

*Insurance Co. of North America,* 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1284 (1978); *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985). Even considering the strong federal policy favoring arbitration discussed above, parties cannot be forced to arbitrate claims that they clearly have *not* contracted to arbitrate. *Okcuoglu v. Hess, Grant & Co.,* 580 F.Supp. 749, 750 (E.D.Pa.1984). To so hold would go beyond "constru[ing]" the parties' intentions, *Mitsubishi, supra,* 473 U.S. at 626, 105 S.Ct. at 3353, or "construction of the contractual language," *Moses H. Cone, supra,* 460 U.S. at 24–25, 103 S.Ct. at 941–42—it would involve an unjustified and impermissible *disregard* of the contract language and expressed intentions of the parties.

■ Applying these principles to the present contract, it is clear that this case falls into the second general category delineated above. The language here does not evoke mere notice or non-waiver. The contract unambiguously creates a substantive securities claim exception to the agreement to arbitrate, and the Court would therefore not be justified in disregarding that contract and going beyond its terms, on the basis of policies or hypotheses about the possible motivations of the parties.

Accordingly, the defendants' motions to compel arbitration of the federal securities claims are denied.

### 2. Motions to Dismiss.
#### A. Rule 9(b).

Count I of the Complaint alleges various violations of Section 10(b) and Rule 10b–5. Defendant FiCS has moved to dismiss these claims for lack of particularity under Fed.R.Civ.P. 9(b). As indicated below, that motion is granted with respect to FiCS.

In a motion to dismiss a complaint for failure to plead fraud with particularity as required by Rule 9(b),[3] plaintiffs' allegations must be taken as true. *See, e.g., Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir. 1986). Rule 9(b) requires that "[i]n all

averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Traditional requisites of Rule 9(b) include specification of the time, place, speaker, and sometimes even the content of the alleged misrepresentation. *Id.* at 54. The complaint's fraud allegations must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint" and must give "adequate information" to allow the defendant "to frame a response." *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557–58 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) must, however, be read in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief. *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 n. 20 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

Rule 9(b) is designed to provide a defendant with fair notice of a plaintiff's claim, in order to enable a defendant to prepare a defense, protect defendant's reputation or goodwill from harm, and reduce the number of strike suits. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). The Rule may be satisfied by allegations in the complaint setting forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making same), (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud."

*Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167, 1172 (S.D.N.Y.1985) (*quoting Todd v. Oppenheimer & Co.,* 78 F.R.D. 415, 420–21 (S.D.N.Y.1978)); *see also Crystal v. Foy, 562 F.Supp. 422, 425 (S.D.N.Y. 1983).*

---

**3.** It is well settled that a claim of securities fraud under section 10(b) falls within the ambit of Rule 9(b). *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986); *Decker v. Massey–Ferguson, Ltd.,*

681 F.2d 111, 115 (2d Cir.1982); *Ross v. A.H. Robins, Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

■ It is important to note that where there are multiple defendants, as in the present case, the complaint must disclose the specific nature of each defendant's participation in the alleged fraud. *DiVittorio, supra,* 822 F.2d at 1247. Furthermore, the allegations of fraud cannot ordinarily be based on information and belief, *Luce, supra,* 802 F.2d at 54; *Leslie v. Minson,* 679 F.Supp. 280, 282 (S.D.N.Y.1988), although this pleading restriction may be somewhat relaxed where the matter is peculiarly within the knowledge of the defendant. *DiVittorio, supra,* 822 F.2d at 1247. Even when pleading on information and belief is appropriate, however, plaintiffs are required to include a statement of facts upon which the allegations of fraud are based. *Stern v. Leucadia National Corp.,* 844 F.2d 997, 1004 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988).

Similarly, while Rule 9(b) allows "conditions of mind" to be averred generally, plaintiffs must at least present those circumstances that provide a "minimal factual basis" for the allegations of scienter. *See, e.g., Connecticut National Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987). In other words, Rule 9(b) requires that the complaint allege specific facts which support any conclusory allegations that the misstatements complained of were intentionally fraudulent. The Second Circuit has commented:

> Although Rule 9(b) provides that intent and "other condition of mind" may be averred generally, plaintiffs must nonetheless provide some factual basis for conclusory allegations of intent. These allegations must give rise to a "strong inference" that the defendants possessed the requisite fraudulent intent.

A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so. Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.

*Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987) (citations omitted), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

■ Application of the above standards to this case indicates that the particularity required by Rule 9(b) is not approached by this complaint. The majority of the fraud allegations in the complaint do not refer to FiCS, or insufficiently refer to "defendants" generally. *See, e.g.,* Complaint ¶¶ 16, 36. The specific representations by FiCS that are alleged are not asserted to be fraudulent in any way, *see,* Complaint ¶¶ 20–22, 24, 25, and in fact on their face appear to be proper communications between FiCS and the plaintiff under the relevant agreements. The unsupported argument, not stated in the complaint, that alleged misrepresentations by other defendants were made "under FiCS' direction" is similarly insufficient. *See* Plaintiff's Memorandum in Opposition at p. 12.

Finally, the Court notes that the requisites of Rule 9(b) apply to allegations of aiding and abetting fraud, and to the extent that such a claim is asserted against FiCS, it is likewise inadequately pled. *See, e.g., Andreo v. Friedlander, Gaines, Cohen,* 651 F.Supp. 877, 880 (D.Conn.1986).

Accordingly, FiCS' motion to dismiss under Fed.R.Civ.P. 9(b) is granted. It is therefore not necessary at this time to consider the position which FiCS takes with regard to Fed.R.Civ.P. 12(b)(6). That position is, apparently, that a cause of action for securities fraud cannot *ever* be stated by a public customer against a clearing broker, as a matter of law.

■ Finally, plaintiff's motion to compel discovery is denied with respect to FiCS. It is well settled law that an insufficient and conclusory complaint cannot serve as the basis for discovery aimed at fishing for a possible claim against the purported defendant. *See, e.g., American Communications Ass'n v. Retirement Plan,* 488 F.Supp. 479, 484 (S.D.N.Y.1980), *aff'd,* 646 F.2d 559 (2d Cir.1980); *Avnet, Inc. v. American Motorists Insurance Co.,* 115 F.R.D. 588 (S.D.N.Y.1987). Protection from such discovery is consistent with the policies underlying Rule 9(b).

The other defendants have not challenged the sufficiency of the present complaint, however, and discovery should be proceeding with respect to those parties, if it is not already.

## CONCLUSION

For the foregoing reasons, all defendants' motions to compel arbitration of federal securities claims are denied.

Defendant FiCS' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 9(b) is granted; plaintiff's cross motion to compel discovery is denied with respect to FiCS. Plaintiff will have 60 days from the issuance of this order to attempt to replead the complaint. If no amended complaint is filed within that period, this dismissal against FiCS will be deemed with prejudice. Counsel for the remaining parties will appear on November 3, 1989 at 2:00 p.m. in Courtroom 36 for a status conference.

SO ORDERED.