## LIBERTY RIDGE LLC

v.

## REALTECH SYSTEMS CORP.

No. 01 Civ. 5974(MP).

United States District Court,
S.D. New York.

Nov. 13, 2001.

Lowenstein Sandler PC, (Michael S. Etkin, Steven M. Hecht and Sheila Sadighi, of counsel), New York City, for Plaintiffs.

Jenkins & Gilchrist Parker Chapin LLP (Stephen G. Rinehart, of counsel), New York City, for Defendants.

## *OPINION*

MILTON POLLACK, Senior District Judge.

Plaintiffs are Liberty Ridge, LLC ("Liberty Ridge") and individual investors in Defendant RealTech Systems Corporation ("RealTech"). Plaintiffs claim that Defendants are liable under Sections 12, 15, and 20(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder. Plaintiffs also allege that defendants committed common law fraud, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing.

Plaintiffs seek to recover the consideration paid by them to Defendant RealTech in the amount of $3,080,022.00, with interest, and damages in the amount of $3,080,022.00.

Defendants have filed a Motion to Dismiss the Complaint pursuant to: (1) Rule 12(b)(6) of the Federal Rules of Civil Pro-

cedure ("Fed. R. Civ.P."), for failure to state a claim upon which relief can be granted; (2) Rule 9(b), Fed.R.Civ.P., for failure to plead fraud with particularity; (3) Rule 12(b)(1), Fed.R.Civ.P., dismissing the pendant state claims for lack of subject matter jurisdiction; and (4) granting such other and further relief as the court may deem just and proper.

## I. BACKGROUND

Plaintiffs' claims arise out of (1) the sale of 560,000 shares of Series C Preferred Stock by RealTech to Liberty Ridge for an aggregate purchase price of $1,885,352, and (2) the sale of 360,000 shares of common stock by RealTech to the individual plaintiffs for an aggregate purchase price of $1,194,670, in transactions that occurred between December, 1999 and March, 2000.

According to Plaintiffs, in selling these securities Defendants misrepresented and omitted material facts relating to Real-Tech's financial and business positions. They further allege that, due to the relationships among the individual Plaintiffs and between the individual Plaintiffs and Liberty Ridge, the Defendants could and did make representations to Liberty Ridge and one or more of the individual Plaintiffs with the intent and knowledge that the representations would be shared with other Plaintiffs.

First, Plaintiffs claim that Defendants made misrepresentations and omitted material facts relating to RealTech's financial position for the year 1999. According to their allegations, prior to the investments by Liberty Ridge and the individual investors, Defendants disclosed information relating to RealTech's financial position up to September 30, 1999 which materially understated the losses sustained by RealTech in the first three quarters of that year. Plaintiffs further allege that, although Defendants characterized RealTech's fourth quarter as "going well," the company in fact sustained a fourth quarter loss that was more than one and a half times the recorded losses for the first three quarters of the year combined and exceeded the projected fourth quarter losses in the Business Plan given to one of the individual investors by more than $2 million. Thus, Plaintiffs assert that Defendants' optimistic statements regarding the outlook for RealTech's fourth quarter 1999 performance were intentionally false and misleading.

Second, Plaintiffs allege that Defendants made misrepresentations and omitted material facts relating to RealTech's business position. Plaintiffs allege that defendants falsely represented that RealTech was shifting the focus of its business by phasing out its value added reseller ("VAR") business in favor of services business, and that the cash generated by the Plaintiffs' investments would be used to expand RealTech's business presence in the service provider market by financing, *inter alia*, strategic office expansion nationwide and the hiring of top industry engineers. They argue that these representations were false and misleading, because within approximately two weeks of closing the majority of the Plaintiffs' investments, Defendants sent out nearly $3 million in satisfaction of an apparently past-due account in connection with RealTech's old VAR business, leaving RealTech with inadequate operating capital despite the infusion of the Plaintiff's funds. Plaintiffs allege that their investments were used to satisfy this account instead of for the expansion of RealTech's business presence in the service provider market.

Finally, Plaintiffs claim that Defendants LaChance, Yanneck and Mesich, because of the positions they occupied at RealTech and the responsibilities and duties associated with those positions, knew or reck-

lessly failed to know RealTech's true financial and business positions and thus knew or recklessly failed to know of the falsity of RealTech's representations to Plaintiffs. Amended Complaint (hereinafter "Am. Compl.") ¶¶ 74–76. Plaintiffs further allege that Defendants LaChance and Yanneck affirmatively misrepresented RealTech's business plan and financial situation to both Liberty Ridge and to a number of the individual investors. Am. Compl. ¶ 78, 84.

## II. DISCUSSION

### 1. Motion to Dismiss Pursuant to Rule 12(b)(1)

■ Normally, motions to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) must be decided before motions pursuant to other Federal Rules of Civil Procedure are considered, *Integrated Utilities Inc. v. United States*, 1997 WL 529007 at *2 (S.D.N.Y.1997) (Scheindlin, J.), "[s]ince dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot." *United States v. Space Hunters, Inc.*, 2001 WL 968993 at *3 (S.D.N.Y.2001) (Casey, J); *see United States ex rel Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir.1993), *cert. denied sub nom Kreindler & Kreindler v. United Techs. Corp.*, 508 U.S. 973, 113 S.Ct. 2962, 125 L.Ed.2d 663 (1993). In this case, however, Defendants' 12(b)(1) motion relates solely to Plaintiffs' state law claims, requesting their dismissal for lack of supplemental jurisdiction should the Plaintiffs' federal claims be dismissed. It is therefore necessary to consider the substance of Defendants' claims, and render a decision on 12(b)(6) grounds, before returning to the 12(b)(1) motion.

### 2. Motion to Dismiss Pursuant to Rule 12(b)(6)

On a motion to dismiss pursuant to Rule 12(b)(6), "a court must accept as true all well-pleaded factual allegations of the complaint and must draw all inferences in favor of the pleader." *Dafofin Holdings S.A. v. Hotelworks.com, Inc.*, 2001 WL 940632 at *2 (S.D.N.Y.2001) (Preska, J). Mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions" will not suffice to avoid dismissal. *Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331, 333 (S.D.N.Y.2000) (Conner, J) (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[a][b] (3d ed.1997)). A motion for dismissal should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994).

### 3. Section 12(a)(2) Claims Under the 1933 Act.

■ Section 12(a)(2) of the Securities Act of 1933 imposes liability on any person who "offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements ... not misleading."

Defendants argue that plaintiffs lack standing to sue under Section 12(a)(2) of the Securities Act of 1933, since that section applies only to the initial public offering of stock, not to secondary private offerings. *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 576, 115 S.Ct. 1061, 1070, 131 L.Ed.2d 1 (1995).[1] In *Gustafson*, the

1. *See generally* Paul C. Curnin and Christine M. Ford, *The Critical Issue of Standing Under*

Court held that the term "prospectus," as it is used in Section 12(a)(2), "is confined to documents related to public offerings by an issuer or its controlling shareholders." *Gustafson* at 569, 115 S.Ct. 1061. Plaintiffs counter that they have alleged misrepresentations made by oral communications, not by a prospectus, and that this case is therefore distinguishable from *Gustafson*. They point out that, while the *Gustafson* Court noted agreement amongst the Courts of Appeals that "the phrase 'oral communications' is restricted to oral communications that relate to a prospectus," *Gustafson* at 567–568, 115 S.Ct. 1061, the Court did not analyze the issue and thus ruled only on the meaning of the term "prospectus."

In this District, courts have consistently interpreted *Gustafson* to hold that the term "oral communication" in Section 12(a)(2) is a "communication that relates to a public written communication, such as a prospectus." *Dietrich v. Bauer*, 76 F.Supp.2d 312, 330 (S.D.N.Y.1999) (Sweet, J); *accord Waltree Ltd. v. ING Furman Selz LLC*, 97 F.Supp.2d 464, 469–70 (S.D.N.Y.2000) (Scheindlin, J); *Double Alpha, Inc. v. Mako Partners, L.P.*, 2000 WL 1036034, at *3 (S.D.N.Y.2000) (Chin, J). Furthermore, in *Laser Mortgage Mgmt. Inc. v. Asset Securitization Corp.*, 2001 WL 1029407 (S.D.N.Y.2001) (Buchwald, J), the court noted that "Gustafson suggests that the purpose of Section 12 is to protect public purchasers of securities ... [t]hat purpose would not be served by extending liability to those who purchase securities in private placements." *Laser Mortgage* at *7.

Here, the oral communications alleged by Plaintiffs to have contained misrepresentations did not pertain to a prospectus.

Furthermore, the securities transaction at issue here is not a public one, but rather is a private placement. Consequently, the Court grants so much of Defendants' motion to dismiss Plaintiffs' claims as asserts liability under Section 12(a)(2) of the Securities Act of 1933.

### 4. 10(b) and 10b–5 Claims

#### A. Timeliness

 Defendants contend that Plaintiffs' claims under Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder ("Section 10(b) and Rule 10b–5") are time-barred, as they were not "brought within one year after the discovery of the facts constituting the violation and within three years after such violation" as required by Section 9(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78i(e) (governing claims under Section 10(b) and Rule 10b–5) and by Section 13 of the Securities Act of 1933, 15 U.S.C. § 77(m). The one-year time period begins to run "at the point at which a plaintiff has enough facts to be on inquiry notice of a potential claim; it does not wait until he has full knowledge of the eventual particulars of his case." *Ingenito v. Bermec Corp.*, 441 F.Supp. 525, 554–55 (S.D.N.Y.1977) (Lasker, J) *citing Klein v. Shields & Co.*, 470 F.2d 1344, 1347 (2d Cir.1972). Defendants maintain that Plaintiffs had adequate "storm warnings" of trouble at RealTech to put them on inquiry notice of fraud. *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir.1993), *cert. denied*, 511 U.S. 1019, 114 S.Ct. 1401, 128 L.Ed.2d 74, alleging, for example, that the loss projections in RealTech's business plans and the fact that RealTech had not hired a CFO to complete the fourth quar-

*Section 11 of the Securities Act of 1933*, 6 Fordham J. Corp. & Fin. L. 155, 170–174 (2001).

ter and year end financial statements should have indicated the possibility of fraud to Plaintiffs. Defendants contend that Plaintiffs, as insiders, had access to RealTech's books and records, had the means by which to conduct an inquiry into any suspected misconduct, and were under a duty to do so.

Plaintiffs counter that the one year limitations periods applicable here, by their terms, do not begin until the plaintiff has "discovered" the facts constituting the violation. *Rothman v. Gregor,* 220 F.3d 81, 96 (2d Cir.2000), *citing Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364 & n. 9, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Further, that inquiry notice requires a plaintiff to know that the alleged fraud is probable, not merely possible. *In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.,* 815 F.Supp. 620, 638 (S.D.N.Y.1993) (Sweet, J). Plaintiffs argue that RealTech's business plans were consistent with Defendants' representations to Plaintiffs and, as such, could not serve as warnings of fraud. They maintain that they did not know of the possibility of fraud until the December, 2000 bankruptcy of a RealTech customer that·owed the company $2.5 million.

The question of Plaintiffs' knowledge of Defendants' alleged fraud, and when this knowledge arose, is clearly a question of fact. Plaintiffs' allegations on this issue are sufficient to defeat Defendants' motion to dismiss pursuant to Rule 12(b)(6).

## B. Satisfaction of the Particularity Requirements of PSLRA and Rule 9(b)

To state a claim for relief pursuant to Section 10(b) and Rule 10b–5, Plaintiffs must allege that Defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *In re IBM Corp. Sec. Litig.,* 163 F.3d 102, 106 (2d Cir.1998). Where fraud is alleged, both Fed.R.Civ.P. 9(b) ("Rule 9(b)") and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(b)(1) ("PSLRA") require it to be pleaded with particularity, and where multiple defendants are involved, "the complaint must disclose the specific nature of each defendant's participation in the alleged fraud." *Stander v. Financial Clearing & Services Corporation,* 718 F.Supp. 1204, 1210 (S.D.N.Y. 1989) (Leisure, J), *citing DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). This heightened pleading requirement serves a threefold purpose: first, to provide the defendant with fair notice of the plaintiff's claim, to enable him to prepare a defense; second, to protect the defendant from harm to his reputation or goodwill; and, third, to reduce the number of strike suits. *DiVittorio* at 1247. A plaintiff may satisfy the requirement by specifying "(1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making same); (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants 'obtained as a consequence of the fraud.'" *Stander* at 1209, *citing Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167, 1172 (S.D.N.Y.1985) (Duffy, J) (citations omitted).

Where matters are "peculiarly within the defendant's knowledge," *Ahmed v. Trupin,* 781 F.Supp. 1017, 1024 (S.D.N.Y.1992) (Sweet, J), however, the standards for pleading under Rule 9(b) are

less stringent. In cases of "[m]alice, intent, knowledge, and other condition of mind of a person" a general assertion is sufficient, Fed.R.Civ.P. 9(b); the plaintiff must simply state "the facts upon which [his] belief of such knowledge is based." These pleadings must "present a factual basis giving rise to a strong inference of fraudulent intent." *Ahmed* at 1024, *citing O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991).

■■■ Allegations of scienter may be based on information and belief. *DiVittorio, supra*, 822 F.2d at 1247. "Even when pleading on information and belief, however, plaintiffs are required to include a statement of facts upon which the allegations of fraud are based." *Stander* at 1210, *citing Stern v. Leucadia National Corp.*, 844 F.2d 997, 1004 (2d Cir.), *cert denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109(1988).

■■ Defendants contend that Plaintiffs have not stated a claim for relief under Section 10(b) or Rule 10b–5, since: they have not alleged that Defendants acted with scienter; they have not pleaded Defendants' alleged misstatements with particularity; they have not pleaded reasonable reliance upon the alleged representations; and, finally, they have not alleged causation. Plaintiffs point out that, the heightened pleading requirements of Rule 9(b) and the PSLRA notwithstanding, the Second Circuit "do[es] not require the pleading of detailed evidentiary matter in securities litigation." *In re Scholastic Corporation Securities Litigation*, 252 F.3d 63, 72 (2d Cir.2001). While a complaint must give adequate notice of the charges against a defendant, "it need not marshal all the evidence." *Sierra Rutile Ltd. v. Katz*, 1992 WL 236208 at *6 (S.D.N.Y. Sept. 8, 1992) (Keenan, J). Furthermore, courts should not demand a level of specificity in fraud pleadings that

can only be achieved through discovery. *See Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1124 (S.D.N.Y.1982) (Ward, J) ("Rule 9(b) is not a vehicle by which potentially meritorious claims are to be driven out of court because the plaintiff has failed to allege facts that he can only obtain through taking discovery that he has thus far been denied."); *Rich v. Touche Ross & Co.*, 68 F.R.D. 243, 247 (S.D.N.Y.1975) (Brieant, J). ("At this early stage in the proceedings, plaintiffs' pleadings should not be judged by the standard to be applied on trial of the ultimate merits.").

■■ It is clear that Plaintiffs have adequately stated a claim for relief under Section 10(b) and Rule 10b–5 pursuant to the standards outlined above. First, "[a]llegations of scienter are not subject to the same exacting scrutiny applied to the other components of fraud." *Dietrich, supra*, 76 F.Supp.2d at 329. Plaintiffs' Amended Complaint sets forth strong circumstantial evidence showing that Defendants knew at the time that they made the misrepresentations and omissions described above that those statements were false and misleading. Specifically, Plaintiffs point to the timing of RealTech's $3 million dollar payment to Cisco in connection with the Company's VAR business, Am. Compl. ¶ 70, coming, as it did, within days of RealTech's receipt of Plaintiffs' investment funds, as an indication that defendants never intended to use the proceeds of Plaintiffs investments to expand the services business. Am. Compl. ¶ 72. These allegations therefore plead scienter with sufficient specificity to withstand a motion to dismiss.

Second, Plaintiffs have specified Defendants' misrepresentations regarding RealTech's financial health and the use of the proceeds of Plaintiffs' investments with sufficient particularity to satisfy Rule 9(b) and the PSLRA. Plaintiffs claim that De-

fendants presented RealTech's cash position as "sound." Am. Compl. ¶ 48. Defendants allegedly told the Liberty Ridge investors that RealTech was seeking investments to expand its services business, and that the company was turning attention from its VAR business to the services side. Am. Compl. ¶ 43. According to Plaintiffs, Defendants told them their investment funds would be used to complete the transition and expand the services business. Am. Compl. ¶ 71.

Plaintiffs assert that these representations were intentionally false and misleading because, at the time they were made, RealTech was in fact not in a position to move forward unencumbered by its VAR business, or to use the proceeds of the investment for growth. Within approximately two weeks of closing the majority of Plaintiffs' investments, Defendants sent out nearly $3 million in payment of the company's overdue VAR debt. Am. Compl. ¶ 70.

Fourth, Defendants contend that there were sufficient "storm warnings," *Dodds v. Cigna, supra,* at 350, about RealTech's financial difficulties to render any reliance on Defendants' assertions unreasonable. Plaintiffs argue that there were no such warnings of trouble at RealTech, and that it was reasonable for them to rely on the information and assurances given to them by Defendants. Since the question of whether Plaintiffs' reliance on Defendants' assurances of RealTech's fiscal health was reasonable is largely one of fact, it is not amenable to disposition on motion to dismiss.

▰ Finally, on the question of causation, a two-pronged approach is taken under Federal securities law. "[A] plaintiff must allege both transaction causation, i.e., that but for the fraudulent statement or omission, the plaintiff would not have entered into the transaction; and loss cau-

sation, i.e., that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Castellano v. Young & Rubicam,* Inc., 257 F.3d 171, 186 (2d Cir.2001) (quoting *Suez Equity Investors v. Toronto–Dominion Bank,* 250 F.3d 87, 95 (2d Cir.2001)). Plaintiffs have sufficiently alleged both. Plaintiffs allege that they would not have invested if RealTech's true financial and business position had been disclosed, Am. Compl. ¶ 73, an allegation which satisfies the transaction causation requirement. They argue that Defendants' representations regarding the Company's business and financial positions at the time of plaintiffs' investments set the (apparent) value of the Company, and accordingly the price of the stock that Plaintiffs purchased. Plaintiffs argue that Defendants' misrepresentations induced a disparity between the transaction price and the true "investment quality" of the securities at the time of the transaction. On a motion to dismiss, this allegation of loss causation is sufficient.

### ii. As Against Individual Defendants

▰ Defendants claim that Plaintiffs have not sufficiently alleged scienter on the part of the individual defendants. "Boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter." *In Re Sotheby's Holdings, Inc.,* 2000 WL 1234601 at *7 (S.D.N.Y. Aug. 31, 2000).

Plaintiffs do not, however, allege scienter on the basis of the individual Defendants' holding of executive positions alone. Rather, they claim that Defendants' specific roles with regard to the finances of the Company, and their direct participation in generating financial information given to the Plaintiffs, put each in a position to know whether the representations being

made were accurate or not. Am. Compl. ¶¶ 74–76. Plaintiffs assert that Defendant Mesich, as Controller and Director of Accounting and Analysis for RealTech, was responsible for the financial misrepresentations and material misstatements made by the company, was aware of the falsity of the financials and other information provided to the Plaintiffs, and was aware of the material significance of these misrepresentations. Am. Compl. ¶¶ 88, 89, 91. With respect to Defendants Yanneck and LaChance, Plaintiffs have alleged direct and specific involvement in presenting the false and misleading information to the investors. For example, Plaintiffs assert that Yanneck was directly involved in the solicitation and consummation of Plaintiffs' investments. Am. Compl. ¶ 76. Both Yanneck and LaChance allegedly participated in a meeting at RealTech's New York offices at which the company's financial statements as of September 1999 were presented to Plaintiffs. Am. Compl. ¶¶ 78, 84, and during which they represented that RealTech's "fourth quarter was proceeding 'on track' and that the company was 'doing well.'" Am. Compl. ¶ 49. In addition, Plaintiffs claim Defendant LaChance "significantly participated in the compilation and preparation of RealTech's financial statements while it had no acting CFO." Am. Compl. ¶ 74. These claims allege enough of an individual, affirmative role on the part of Defendants Mesich, LaChance and Yanneck in the making misrepresentations to Plaintiffs to survive a motion to dismiss.

## III. CONCLUSION

Defendants' motion to dismiss Counts I and II is granted and their motion to dismiss the balance of the Amended Complaint is denied in all respects. Since Plaintiffs' federal law claims are not being dismissed, the Court retains supplemental jurisdiction over their state law claims.

So Ordered